## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

ARNOLD FISHON, LILLY PEREZ, and
TANA PARKER on behalf of themselves
and all others similarly situated,

                *Plaintiff*,

     v.

MARS PETCARE US, INC.,

                *Defendants*.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 3:19-cv-00816
Chief Judge Waverly D. Crenshaw, Jr
Magistrate Judge Alistair Newbern

JURY DEMAND

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANT'S MOTION TO DISMISS AND TO STRIKE

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................................. 1

II.  BACKGROUND ................................................................................................. 2

III. ARGUMENT ...................................................................................................... 5

   A.   PLAINTIFFS FAIL TO STATE A CLAIM. .................................................... 5

   B.   PLAINTIFFS FAIL TO PLEAD WITH PARTICULARITY. ............................. 7

   C.   PLAINTIFFS' MMWA CLAIM FAILS. ....................................................... 8

   D.   PLAINTIFFS' CLAIMS FAIL UNDER UNSPECIFIED STATE LAWS. ........... 12

   E.   PLAINTIFFS' EXPRESS WARRANTY CLAIMS FAIL. ............................... 12

   F.   PLAINTIFFS' IMPLIED WARRANTY CLAIMS FAIL. ................................ 13

   G.   PLAINTIFFS' UNJUST ENRICHMENT CLAIMS FAIL. ............................. 13

   H.   PLAINTIFFS' VIRGINIA CONSUMER PROTECTION ACT CLAIM FAILS. .. 14

   I.   PLAINTIFFS LACK STANDING FOR INJUNCTIVE RELIEF. ...................... 14

   J.   PLAINTIFFS' NATIONWIDE ALLEGATIONS ARE FACIALLY DEFECTIVE. ... 16

       1.   Varying Laws of 50 States Govern the Nationwide Class Claims. .............. 17

       2.   Substantial Variations Among State Law Precludes a Finding of Predominance. ...... 18

CONCLUSION ........................................................................................................ 23

Case 3:19-cv-00816   Document 10   Filed 11/18/19   Page 2 of 26 PageID #: 42

# I.  INTRODUCTION

Plaintiffs are three dog owners who purport to bring a putative nationwide class action against Mars Petcare US, Inc. ("Mars Petcare") on behalf of "[a]ll persons residing in the United States and its territories who, during the maximum period of time permitted by law, purchased IAMS [Proactive Health Sensitive Skin & Stomach Grain-Free Recipe with Chicken & Peas ("IAMS® Proactive Health")]." Complaint ("Compl.") ¶¶ 1, 36. Plaintiffs neither question the nutritional value of the dog food that they purchased, nor suggests it was unpalatable or harmful to their dogs in any way. Instead, they allege that testing they performed on an unspecified quantity of IAMS® Proactive Health revealed the presence of more than "a trace amount" of corn and soy. Compl. ¶ 20. On that basis alone, Plaintiffs filed a multi-count nationwide putative class action that seeks injunctive relief, attorney's fees, "expenses and costs of suit," and "compensatory, statutory, and punitive damages." Compl. ¶ 23.

Plaintiffs' claims fail for numerous reasons. *First*, Plaintiffs' claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a plausible claim for relief. *Second*, Plaintiffs' claims sounding in fraud fail to satisfy the heightened pleading standard under Federal Rule of Civil Procedure 9(b). *Third*, Plaintiffs fail to specify under which state laws they bring their breach of warranty (Counts II and III) and unjust enrichment (Count IV) claims. *Fourth*, Plaintiffs fail to allege basic elements of breaches of the Magnuson-Moss Warranty Act ("MMWA") (Count I), express warranty (Count II), implied warranty of merchantability (Count III), and unjust enrichment (Count IV). *Fifth*, Plaintiffs cannot seek class relief under the Virginia Consumer Protection Act ("VCPA"). *Sixth*, Plaintiffs' nationwide class allegations should be stricken from the complaint under Federal Rules of Civil Procedure 12(f), 23(c)(1)(A), and 23(d)(1)(D) as they are facially

1

defective.[1] *Finally*, Plaintiffs' claims for injunctive relief should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1), as Plaintiffs lack standing to seek such relief.

## II.    BACKGROUND

Pets make the world a better place. For its part, Mars Petcare strives to make A Better World For Pets™ by manufacturing nutritious pet foods such as IAMS®, Pedigree®, Royal Canin®, Eukanuba®, and Nutro™. Plaintiffs, in turn, are three dog owners who allegedly purchased a single variety of IAMS® dog food known as IAMS® Proactive Health. *See* Compl. ¶¶ 1, 33-35. IAMS® Proactive Health is available in various sizes including 4.4-pound, 10.3-pound, and 19-pound bags. IAMS® Proactive Health's "quality, easily digestible ingredients provide . . . dog[s] with healthy skin, a healthy coat, and strong bones." Compl. ¶ 12.

IAMS® Proactive Health has numerous advertised benefits. "Why Proactive Health™?" Exhibit ("Ex.") 1.[2] The answers include: (1) "STRONG MUSCLES, Supports strong firm muscles

---

[1] "Under Rules 23(c)(1)(A) and 23(d)(1)(D), as well as pursuant to Rule 12(f), this Court has authority to strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained." *Hovsepian v. Apple, Inc.*, No. 08-5788 JF (PVT), 2009 WL 5069144, at *2 (N.D. Cal. Dec. 17, 2009).

[2] Exhibits referenced in this Memorandum can be found attached to the contemporaneously filed Declaration. In addition to considering the complaint itself, this Court may consider "exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein." *Luis v. Zang*, 833 F.3d 619, 626 (6th Cir. 2016). Here, Plaintiffs not only refer extensively to the packaging for IAMS® Proactive Health in their complaint, but text and information on the product labeling purports to form the basis of their claims. *See*, *e.g.*, Compl. ¶¶ 1, 12-19. Courts in this Circuit and others addressing motions to dismiss claims based on food-product labeling routinely take judicial notice of product packaging referenced in the complaints. *See e.g., McKinney v. Bayer Corp.*, 744 F. Supp. 2d 733 (N.D. Ohio 2010) (taking judicial notice of vitamin-product packaging in consumer's action against vitamin producer); *Yeldo v. MusclePharm Corp.*, 290 F. Supp. 3d 702, 708 (E.D. Mich. 2017) ("Courts addressing motions to dismiss product-labeling claims routinely take judicial notice of images of the product packaging." (internal quotation marks and citation omitted)); *Gustavson v. Wrigley Sales Co.*, 961 F. Supp. 2d 1100, 1113 n.1 (N.D. Cal. 2013) (taking judicial notice of product packaging that the complaint "specifically referenced and quotes"); *Rooney v. Cumberland Packing Corp.*, No. 12-CV-0033-H (DHB), 2012 WL 1512106, at *2 (S.D. Cal. Apr. 16, 2012) (noticing "four color reproductions of the panels of two boxes of Sugar in the Raw"); *McKinniss*

with protein sources from chicken and egg"; (2) "HEALTHY ENERGY, Carbohydrates from garden peas for healthy energy"; (3) "HEALTHY TEETH, Crunchy kibbles scrub your dog's teeth with every bite to help reduce plaque buildup that can lead to bad breath"; (4) "HEATLHY SKIN AND COAT, Balanced ratio of Omega 6 and 3 for healthy skin and shiny coat"; and (5) "NO CHICKEN BY-PRODUCT MEAL, Made with high quality ingredients and no fillers." Compl. ¶ 17; *see also id.* ¶ 16 ("Supports strong, firm muscles with protein from chicken and egg.").

Additionally, IAMS® Proactive Health is "[t]ailored for dogs with grain sensitivities." *Id.* ¶ 14. In particular, IAMS® Proactive Health has a "GRAIN FREE RECIPE." *Id.* ¶¶ 13, 17. That is, the recipe for IAMS® Proactive Health is crafted without corn, wheat, or soy, and instead contains a "tailored blend of wholesome fiber and natural prebiotics to support healthy digestion." *Id.* ¶ 16. The recipe for IAMS® Proactive Health highlights five ingredients:



*v. Sunny Delight Beverages Co.*, No. CV 07-02034-RGK (JCx), 2007 WL 4766525, at *4 n.1 (C.D. Cal. Sept. 4, 2007) (noticing "high-resolution color exemplars" of Sunny Delight product packaging because "[t]hese exemplars better portray the packaging than the black and white photocopy attached to Plaintiff's [complaint]"); *Silva v. Smucker Natural Foods, Inc.*, No. 14–CV–6154, 2015 WL 536002287, at *1 (E.D.N.Y. Sept. 14, 2015) (product labels are appropriate for judicial notice); *Kane v. Chobani, Inc.*, Case No.: 12–CV–02425–LHK, 2013 WL 5289253, at *3 n.3 (N.D. Cal. Sept. 19, 2013) (product labels "appropriate for judicial notice" as "materials referenced in the Complaint"); *Waldman v. New Chapter, Inc.*, 714 F. Supp. 2d 398, 400 n.1 (E.D.N.Y. 2010).

Compl. ¶ 17; *see id.* ¶ 14 ("#1 INGREDIENT IS REAL CHICKEN").[3]

To the exclusion of all other advertised benefits of IAMS® Proactive Health, Plaintiffs focus their complaint on the grain free recipe. *See* Compl. ¶¶ 13, 15-17, 19, 21-22, 25, 33-35, 45(a)-(e). They allege "dog owners choose to purchase products that are grain free and soy free because certain dog breeds have allergies associated with dog foods that contain grain." *Id.* ¶ 21; *see also id.* ¶ 22 ("When pet owners buy grain free and soy free dog food, they usually do so to prevent a health issue[.]"); *id.* ¶ 2 ("Dogs can—and often do—have allergic reactions to certain foods, including those that contain grains, such as corn, wheat, or soy."). Each plaintiff allegedly purchased IAMS® Proactive Health for this allergy-specific reason. *See id.* ¶¶ 33-35.

Plaintiffs incorporate into their complaint five research studies that purport to "have found that pet food sold to consumers frequently contains non-conforming ingredients." Compl. ¶ 32. Their own "independent testing [allegedly] revealed that IAMS Food does in fact contain both corn—a grain—and soy." Compl. ¶ 19; *see id.* ¶ 20 ("[T]he testing done by Plaintiffs indicates that a significant amount of corn and soy are contained in the IAMS Food rather than simply a trace amount."). Plaintiffs do not allege their dogs had grain allergies or that the amount of corn and soy they allegedly found in IAMS® Proactive Health was capable of triggering an adverse food reaction. They nonetheless allege that "they would not have purchased (or paid a price premium)

---

[3] The full grain-free ingredient list is: Chicken, Peas, Pea Starch, Chicken By-Product Meal, Lentils, Chicken Fat (preserved with mixed Tocopherols), Dried Beet Pulp, Natural Flavor, Dicalcium Phosphate, Dried Egg Product, Flaxseed, Potassium Chloride, Salt, Caramel Color, Choline Chloride, Carrots, Minerals (Ferrous Sulfate, Zinc Oxide, Sodium Selenite, Manganese Sulfate, Copper Sulfate, Manganous Oxide, Potassium Iodide), Calcium Carbonate, L-Lysine Monohydrochloride, Fructooligosaccharides, DL-Methionine, Vitamins (Vitamin E Supplement, Ascorbic Acid, Calcium Pantothenate, Vitamin A Acetate, Biotin, Thiamine Mononitrate (source of vitamin B1),Vitamin B12 Supplement, Niacin, Riboflavin Supplement (source of vitamin B2), Inositol, Pyridoxine Hydrochloride (source of vitamin B6), Vitamin D3 Supplement, Folic Acid), L-Tryptophan, Mixed Tocopherols (a preservative), Rosemary Extract. *See* Ex. 2.

4

for IAMS Food had they known the true facts regarding IAMS Food's ingredients." Compl. ¶ 82. With that allegation, Plaintiffs filed a multi-count nationwide putative class action that seeks injunctive relief, attorney's fees, "expenses and costs of suit," and "compensatory, statutory, and punitive damages." Compl. ¶ 23. Plaintiffs' claims should be summarily rejected now, while this lawsuit remains "at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

### III.  ARGUMENT

#### A.  Plaintiffs Fail to State a Claim.

"[A] complaint only survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Estate of Barney v. PNC Bank, Nat'l Ass'n*, 714 F.3d 920, 924 (6th Cir. 2013). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Estate of Barney v. PNC Bank, Nat. Ass'n,* 714 F.3d 920, 924 (6th Cir. 2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). If the Plaintiffs do "not nudge[ ] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

Here, the complaint does not satisfy these basic pleading standards. Plaintiffs' claims depend on the reduced-allergen benefits of IAMS® Proactive Health. Plaintiffs allege IAMS® Proactive Health is "Tailored for Dogs with Grain Sensitivities." Compl. ¶ 15. To that end, Plaintiffs allege IAMS® Proactive Health advertises a "Grain Free Recipe" for "dogs with grain sensitivities." *Id.* ¶¶ 13, 16. They further claim that they, like other "dog owners[,] choose to purchase products that are grain free and soy free because certain dog breeds have allergies associated with dog foods that contain grain." *Id.* ¶¶ 21, 33-35.

5

Plaintiffs do not identify their dog breeds or claim that their dogs even have grain allergies. Instead, they simply claim that their own testing "indicates that a significant amount of corn and soy are contained in the IAMS Food *rather than simply a trace amount*." *Id.* ¶ 20 (emphasis added). Plaintiffs' unadorned belief as to what is "significant" or a "trace amount" remains a mystery. *See Iqbal*, 556 U.S. at 678 ("[N]aked assertions devoid of further factual enhancement" are insufficient.). But, critically absent from the complaint is any allegation or suggestions that the amount of corn and soy allegedly found by Plaintiffs in IAMS® Proactive Health was sufficient to trigger (or did trigger) an adverse food reaction in their dogs. The research studies cited by Plaintiffs explain:[4]

> Finally—and most importantly—the presence of an ingredient not included in a pet food's label does not imply that a patient allergic to this particular food source would have a clinical reaction to this contaminant. Indeed, an individual's clinical reactivity depends upon a combination of factors including the type of allergen(s) recognized by the patient's immune system, the amount of mislabeled allergen(s) present in the pet food and the degree of hypersensitivity of the patient itself.[5]

These same studies explain the process required to diagnose an adverse food reaction in a canine.[6] Nonetheless, Plaintiffs do not allege they undertook this process and cannot allege that the presence of corn and soy in IAMS® Proactive Health caused their dogs to experience an adverse food reaction or otherwise deprived their dogs of the benefits of a pet food "Tailored for Dogs with

---

[4] "When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted).

[5] T. Olivry, *et al.*, *Critically Appraised topic on adverse food reactions of companion animals (5): discrepancies between ingredients and labeling in commercial pet foods*, 14:24 BMC Veterinary Research, at 4 (2018) (cited in Compl. ¶ 31 n.7).

[6] *See id.* at 2.

Grain Sensitivities." Compl. ¶ 15.[7] To the contrary, each plaintiff claims to have purchased IAMS®

Proactive Health on either a bi-weekly or bi-monthly basis for years. *See id.* ¶¶ 33-35. Despite

those repeated alleged purchases, Plaintiffs have not alleged harm to even one of their dogs.

### B.     Plaintiffs Fail to Plead with Particularity.

Claims sounding in fraud or deception pose "a high risk of abusive litigation." *Twombly*,

550 U.S. at 569 n.14. A party offering such claims "must state with particularity the circumstances

constituting fraud or mistake." *United States v. Walgreen Co.*, 846 F.3d 879, 880-81 (6th Cir.

2017); Fed. R. Civ. P. 9(b). Plaintiffs must "specify the 'who, what, when, where, and how' of the

alleged fraud." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 887 (6th Cir. 2006).

Here, Plaintiffs' allegations sound in fraud and are pleaded insufficiently. *First*, Plaintiffs'

claims sound in misrepresentation, deception, and fraud. Plaintiffs allege Mars Petcare lied to them

by making "false, misleading, and deceptive" representations about IAMS® Proactive Health. *See*

Compl. ¶¶ 18, 81, 85, 87, 89, 98-101, 112, 115-118; *see also id.* ¶ 44 (claiming Mars engaged in

"fraudulent" misconduct). Such allegations require heightened pleading. *See*, *e.g.*, *Brege v. Lakes

Shipping Co.*, 225 F.R.D. 546, 548-49 (E.D. Mich. 2004) (unjust enrichment claim sounding in

fraud must be pleaded with particularity); *Myers v. Lee*, No. 1:10cv131 (AJT/JFA), 2010 WL

2757115, at *6 (E.D. Va. July 12, 2010) (claims under the VCPA that involve allegations of

deception must be pled with heightened particularity).

---

[7] By way of analogy, foods may carry the labels "gluten-free," "no gluten," "free of gluten," or
"without gluten" as long as the amount of gluten in the product is less than 20 ppm, an amount
which, based on epidemiological evidence, can be tolerated by most individuals with celiac disease
without causing adverse health effects. *See* 21 CFR § 101.91; *Food Labeling; Gluten-Free
Labeling of Foods*, 78 Fed. Reg. 47154-02, at * 47160 (Aug. 5, 2013) ("Thus, revising the
proposed threshold gluten content for defining 'gluten-free' to lower than 20 ppm (as per the safety
assessment results) would not offer additional protection or clinical benefits to individuals with
celiac disease.").

*Second*, Plaintiffs' allegations lack the requisite specificity. For example, Plaintiffs fail to allege the "how of the alleged fraud." *Sanderson*, 447 F.3d at 887. Are Plaintiffs claiming Mars Petcare intentionally added corn or soy to its grain free recipe? That claim would be frivolous and contravene the express ingredient list for IAMS® Proactive Health. *See* Ex. 2; *see also Merritt v. Int'l Ass'n of Machinists and Aerospace Workers*, 613 F.3d 609, 627 (6th Cir. 2010) (holding that attorneys assume "a continual obligation . . . to refrain from pursuing meritless or frivolous claims at any stage of the proceedings").

Alternatively, are Plaintiffs claiming inadvertent cross-contact between IAMS® Proactive Health and grain or soy during manufacturing, storing, or shipping? *See*, *e.g.*, Compl. ¶ 30 ("The researchers hypothesized that pet food contamination occurs at two different points during manufacturing[.]"). If so, Plaintiffs' claims implicate different defenses. For example, the research studies cited by Plaintiffs recognize that "[d]espite adequate manufacturing processes, there is always batch-to-batch variation (including cross-contact of ingredients during processing, storing, and shipping which is unavoidable in most pet food production facilities[.])"[8] But, having failed to plead with particularity, Plaintiffs have wrongly left Mars Petcare and the Court to guess about the "how of the alleged fraud." *Sanderson*, 447 F.3d at 887; *Chesbrough v. VPA, P.C.*, 655 F.3d 461, 466 (6th Cir. 2011) (Rule 9(b) alerts defendants "as to the particulars of their alleged misconduct so that they may respond." (citation omitted)).

## C.     Plaintiffs' MMWA Claim Fails.

Plaintiffs invoke the MMWA, claiming Mars "issued written warranties as defined in 15 U.S.C. § 2301(6)." Compl. ¶ 55. Under Section 2301(b), written warranties come in two forms:

---

[8] K. Kanakubo, *et al.*, *Determination of mammalian deoxyribonucleic acid (DNA) in commercial vegetarian and vegan diets for dogs and cats*, Journal of Animal Physiology & Animal Nutrition 2017 Feb;101 (1):70–74 (March 3, 2016) (cited in Compl. ¶ 28 n.4).

(1) a written promise to "refund, repair, replace, or take other remedial action;" or (2) a "written affirmation of fact." 15 U.S.C. § 2301(6). Plaintiffs claim IAMS® Proactive Health did not conform to the "affirmation of fact made on the container or label," because it contained corn and soy. *See* Compl. ¶¶ 55, 75. But, "[n]ot every affirmation of fact made by a manufacturer creates a written warranty." *Schechner v. Whirlpool Corp.*, 237 F.Supp.3d 601, 615 (E.D. Mich. 2017). Two requirements must be met: (1) the statement must "relate[ ] to the nature of the material or workmanship" and (2) the statement must "affirm[ ] or promise[ ] that such material or workmanship is defect free; or will meet a specified level of performance over a specified period of time." 15 U.S.C. § 2301(6).

The MMWA therefore defines "written warranty" narrowly, and "[c]ourts have declined to extend the term . . . beyond its statutory definition." *In re ConAgra Foods*, 908 F. Supp. 2d 1090, 1102 (C.D. Cal. 2012). Notably, a "mere 'product description' may implicitly promise a product will meet expectations or not fall short, but it does not affirmatively promise defect-free performance and it therefore falls outside MMWA's definition." *Schechner*, 237 F. Supp. 3d at 615 (citing *Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 378 (S.D.N.Y. 2014); *Forcellati v. Hyland's, Inc.*, No. CV121983GHKMRWX, 2015 WL 9685557, at *6 (C.D. Cal. Jan. 12, 2015)).

Here, Plaintiffs challenge "representations that IAMS Food did not contain corn, grain, and/or soy." *See* Compl. ¶ 55. These "representations" are not actionable written warranties under the MMWA. Rather, they are product descriptions. It is settled law that descriptions of the contents of food products, such as "all natural" labels, "do not constitute warranties against a product

defect." *Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 903-904 (N.D. Cal. 2012).[9] To accept Plaintiffs' argument to the contrary "would be to transform most, if not all, product descriptions into warranties against a defect." *Littlehale v. Hain Celestial Grp., Inc.*, No. C 11-6342 PJH, 2012 WL 5458400, at *1 (N.D. Cal. July 2, 2012).

Additionally, Plaintiffs' MMWA claims are barred by Section 2311(d). That Section makes clear that the MMWA is "inapplicable to any written warranty the making or content of which is otherwise governed by Federal Law." 15 U.S.C. § 2311(d). In this case, the Federal Food, Drug, and Cosmetic Act ("FDCA") and regulations promulgated by the Food and Drug Administration ("FDA") govern the labeling on IAMS® Proactive Health. In particular, the Code of Federal Regulations contains numerous FDA regulations governing the packaging and labeling of pet food, including: the display panel of package form pet food, 21 C.F.R. § 501.1; the information panel of packaging for pet food, *id.* § 501.2; identity labeling of pet food in package form *id.* § 501.3;

---

[9] *See also, e.g., Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1004 (N.D. Cal. 2012) ("District Courts have held consistently that labeling a product "All Natural" is not a "written warranty" under the MMWA."); *Kao v. Abbott Labs. Inc.*, No. 17-CV-02790-JST, 2017 WL 5257041, at *10 (N.D. Cal. Nov. 13, 2017) ("Plaintiffs do not, and cannot, allege that the Non-GMO labeling is a warranty that the product is 'defect-free.'"); *Quiroz v. Sabatino Truffles N.Y., LLC*, No. SA CV 17-0783-DOC (KES), 2017 WL 8223648, at **10-11 (N.D.N.Y. Sep. 18, 2017); *Hart v. BHH, LLC*, No. 15CV4804, 2016 WL 2642228, at *4 (S.D.N.Y. May 5, 2016); *Perez v. Monster Inc.*, 149 F. Supp. 3d 1176, 1183 (N.D. Cal. 2016); *Ruszecki v. Nelson Bach USA Ltd.*, No. 12–cv–495–L(NLS), 2015 WL 6750980, at *4 (S.D. Cal. June 25, 2015); *Brazil v. Dole Food Co., Inc.*, 935 F. Supp. 2d 947, 966 (N.D. Cal. 2013); *Kosta v. Del Monte Corp.*, No. 12–cv–01722–YGR, 2013 WL 2147413, at * 13 (N.D. Cal. May 15, 2013); *Trazo v. Nestlé USA, Inc.*, No.: 5:12–CV–2272 PSG, 2013 WL 4083218, at *11 (N.D. Cal. Aug. 9, 2013); *Thomas v. Costco Wholesale Corp.*, No. 12–cv–02908–EJD, 2013 WL 1435292, at *6 (N.D. Cal. April 9, 2013); *Samet v. Proctor & Gamble Co.*, No. 5:12–CV–01891 PSG, 2013 WL 3124647, at *10 (N.D. Cal. Jun. 18, 2013); *In re Frito Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413(RRM)(RLM), 2013 WL 4647512, at *16 (E.D.N.Y. Aug. 29, 2013); *Wilson v. Frito–Lay N. Am.*, Inc., No. 12–CV–1586, 2013 WL 1320468, at *15 (N.D. Cal. Apr. 1, 2013); *Lanovaz v. Twinings N. Am., Inc.*, No. C–12–02646–RMW, 2013 WL 675929, at *7 (N.D. Cal. Feb. 25, 2013); *Astiana v. Dreyer's Grand Ice Cream, Inc.*, No. C–11–2910 EMC, 2012 WL 2990766, at *3 (N.D. Cal. July 20, 2012); *Hairston v. South Beach Beverage Co., Inc.*, No. CV 12–1429–JFW (DTBx), 2012 WL 1893818 (C.D. Cal. May 18, 2012).

identification of ingredients, *id.* § 501.4; name and place of business of manufacturer, packer, or distributor, *id.* § 501.5; labeling of pet food with number of servings, *id.* § 501.6; prominence of required statements, *id.* § 501.8; labeling warning statements, *id.* § 501.17; and misbranding of pet food, *id.* § 501.18.

Courts that have considered whether Section 2311(d) bars an MMWA claim founded on labels governed by the FDCA have uniformly concluded that the MMWA claim was barred. *See e.g., Dopico v. IMS Trading Corp.*, No. 3:14-CV-1874-BRM-DEA, 2018 WL 4489677, at *6 (D.N.J. Sept. 18, 2018) ("[T]he MMWA is inapplicable to any alleged express or implied warranty claims on the labeling of the dog treats."); *Stewart v. Smart Balance, Inc.*, No. CIV.A. 11-6174 JLL, 2012 WL 4168584, at *14 (D.N.J. June 26, 2012) (rejecting MMWA claim based on labels governed by Federal law); *Kanter v. Warner-Lambert Co.,* 99 Cal. App. 4th 780, 797 (2002) (finding that Plaintiffs could not state a claim under the MMWA because "the FDCA and its implementing regulations govern the labeling" of head lice treatments); *Hairston v. S. Beach Beverage Co.*, No. CV 12-1429-JFW DTBX, 2012 WL 1893818, at *5 (C.D. Cal. May 18, 2012) (dismissing plaintiff's MMWA claims because "the FDCA and FDA labeling regulations govern the Lifewater labeling challenged by Plaintiff"); *Jasper v. MusclePharm Corp.*, No. 14–02881, 2015 WL 2375945, at *5–6 (D. Colo. April 9, 2015) (finding that because dietary supplement product labels containing allegedly misleading claims about the supplement's attributes or effects were governed by the FDCA, § 2311(d) barred the plaintiff's MMWA claim), *recommendation adopted*, 2015 WL 2375945 (D. Colo. May 15, 2015); *Bates v. Gen. Nutrition Centers, Inc.*, 897 F. Supp. 2d 1000, 1002 (C.D. Cal.2012) ("Defendants are correct that the [MMWA] claim should be dismissed because the [FDCA] governs written warranties on the labeling of dietary supplements.").

11

### D. Plaintiffs' Claims Fail Under Unspecified State Laws.

Plaintiffs' claims of breach of express warranty (Count II), breach of implied warranty of merchantability (Count III), and unjust enrichment (Count IV) are purportedly brought on behalf of "the Class," but fail to specify the respective state laws under which these claims are brought. *See* Compl. ¶¶ 62-83. Mars assumes these claims are brought under Tennessee law, and will analyze them based on that assumption in succeeding sections. However, the fact that the governing state is not specified makes these claims facially defective, and mandates their dismissal. *See In re Nexus 6P Products Liability Litigation,* 293 F. Supp. 3d 888, 933 (N.D. Cal. 2018) (finding that a plaintiff's "failure to allege which state law governs [their] common law claim[s] is grounds for dismissal" (citations omitted))).

### E. Plaintiffs' Express Warranty Claims Fail.

Plaintiffs seek purely economic damages for the alleged breach of an express warranty. *See* Compl. ¶¶ 63-72. Under the Tennessee Code, "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Tenn. Code Ann. § 47-2-313(1)(a) (2010). To maintain an express warranty claim seeking purely economic damages, however, Plaintiffs must allege not only an express warranty, but also privity between the parties. *Messer Greisheim Indus. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457, 463 (Tenn. App. Ct. 2003) ("[A] plaintiff may not maintain a claim for purely economic losses absent contractual privity with the party charged with responsibility for those losses."); *Metro. Gov't of Nashville & Davidson Cty. v. Affiliated Computer Servs., Inc.*, No. 3:07CV0080, 2008 WL 11393151, at *7 (M.D. Tenn. July 17, 2008); *cf.* Tenn. Code § 29–34–104 (2016).

Here, there is no privity alleged, as none of the Plaintiffs contracted with Mars. Rather, Plaintiff Fishon allegedly purchased IAMS Proactive "from Amazon and Target," Compl. ¶ 33,

and Plaintiffs Perez and Parker similarly purchased IAMS Proactive from PetsMart and Walmart, not Mars, *see id.* ¶¶ 34-35; *see also What constitutes privity of contract*, 3 Anderson U.C.C. § 2-314:343 (3d ed.) ("[F]or parties to be in privity of contract they must have contracted with each other.").

### F. Plaintiffs' Implied Warranty Claims Fail.

Plaintiffs seek purely economic damages for the alleged breach of an implied warranty. *See* Compl. ¶¶ 73-77. Tennessee imposes an implied warranty of merchantability that goods are "fit for the ordinary purposes" for which they are used. *See* Tenn. Code Ann. § 47-2-314 (2010). "Importantly, [however,] Tennessee Code Annotated Section 47–2–314 requires privity of contract between the buyer and the seller." *Travis v. Ferguson*, No. M201600833COAR3CV, 2017 WL 1736708, at *2 (Tenn. Ct. App. May 3, 2017); *see also Messer Griesheim Indus.*, 131 S.W.3d at 463 (citing *Trinity Indus. v. McKinnon Bridge Co.*, 77 S.W.3d 159 (Tenn. Ct. App. 2001)). Accordingly, like claims for express warranty, "Tennessee law does not allow recovery of economic losses under a breach of [implied] warranty theory absent privity[.]" *Id.* at 473.

### G. Plaintiffs' Unjust Enrichment Claims Fail.

Unjust enrichment is an equitable remedy, which is not available where an adequate alternative remedy at law exists. *See Capricorn, Inc. v. Tuttle*, No. CA 811, 1989 WL 157804, at *3 (Tenn. Ct. App. Dec. 22, 1989) ("[E]quitable relief will not be granted to a party who has a plain and adequate remedy at law."). Here, Plaintiffs do not (and cannot) allege they lack an adequate remedy at law. *See Hosp. Auth. of Metro. Gov't of Nashville v. Momenta Pharm., Inc.*, 353 F. Supp. 3d 678, 697 (M.D. Tenn. 2018) (Crenshaw, J.) (dismissing Tennessee unjust enrichment claim where "Plaintiffs did not plead absence of a legal remedy").

13

## H. Plaintiffs' Virginia Consumer Protection Act Claim Fails.

Plaintiffs seek class-wide relief under the VCPA on behalf of "[a]ll persons residing in Virginia who . . . purchased IAMS Food[.]" Compl. ¶ 39. But, Virginia law prevents Plaintiffs from suing in a representational capacity without express statutory authorization. *See Casey v. Merck*, 722 S.E.2d 842, 846 (Va. 2012) (A person cannot "assert[] the rights of another, unless authorized by statute to do so.") (quoting *W.S. Carnes, Inc. v. Bd. of Supervisors*, 478 S.E.2d 295, 299 (Va. 1996)). The VCPA contains no such authorization.

Rather, the VCPA enables an individual plaintiff "to initiate an action to recover actual damages, or $500, whichever is greater." Va. Code Ann. § 59.1-204(A) (2010) ("Individual Action for Damages or Penalty"). The VCPA requires lawsuits that seek relief on behalf of others to be brought by Virginia's Attorney General and local enforcement officials. *See* Va. Code Ann. § 59.1-203 (2010); *VNB Capital Corp. v. Fisher*, LC991, 1982 WL 215231 at *5 (Va. Cir. Ct. 1982) ("[T]he primary enforcement mechanism provided in the VCPA is that of injunctive and civil actions prosecuted by the Attorney General or local enforcement officials[.]"). To that end, individuals may not even file lawsuits seeking injunctive relief for violations of the VCPA. *See Physicians Comm. for Responsible Med. v. General Mills, Inc.*, 283 Fed. Appx. 139, 141–44 (4th Cir. 2008). Given these restrictions, Plaintiffs' VCPA class claims seeking monetary and injunctive relief cannot stand.

## I. Plaintiffs Lack Standing for Injunctive Relief.

Plaintiffs lack standing to seek injunctive relief, both individually and on behalf of the putative class. To establish standing for injunctive relief, Plaintiffs must show a threat of future injury that is "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (quotation marks omitted); *see* also *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 832 (6th Cir. 2001). A past injury alone is not sufficient to do so, because "'[p]ast

14

exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" *Grendell*, 252 F.3d at 832 (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)). Accordingly, the Supreme Court and the Sixth Circuit have made clear that without a showing that they will suffer the same injury, Plaintiffs lack standing to seek injunctive relief. *See e.g., Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 184 (2000); *Williams v. City of Cleveland*, 907 F.3d 924, 933 (6th Cir. 2018); *Sumpter v. Wayne Cty.*, 868 F.3d 473, 491 (6th Cir. 2017).

Here, the complaint does not allege a threat that Plaintiffs will suffer the same injury. It explicitly rejects any such threat. Plaintiffs do not allege any desire or intent to purchase IAMS® Proactive Health in the future. Rather, Plaintiffs concede they "would not have purchased IAMS Food on the same terms, had they known that IAMS Food in fact contained corn, grain, or soy," Compl. ¶¶ 91, 102, 120, and that due to their own "testing" they are now aware that "corn and soy are contained in the IAMS Food," Compl. ¶ 20. The complaint concedes that there is no danger that Plaintiffs will be deceived in the future by the "grain free recipe" and "no soy" labels, and therefore disclaims any future purchase of allegedly contaminated product by the Plaintiffs. Compl. ¶ 19.

Such knowledge precludes standing for injunctive relief. *See e.g., Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (holding that a consumer who purchased a weight-loss product lacked standing to pursue injunctive relief because he had "failed to allege that he intends to use [the retailer] in the future to buy any products"); *McNair v. Synapse Grp. Inc.*, 672 F.3d 213, 224 (3d Cir. 2012) (holding that former customers lacked standing to pursue injunctive relief where there was no reasonable likelihood that customers would be injured by marketer's techniques in the future, given that they did not allege that they intended to subscribe to magazines

through marketer again); *Rikos v. Procter & Gamble Co.*, 782 F. Supp. 2d 522, 531-32 (S.D. Ohio 2011) (consumer who brought putative class action against seller of daily digestive food supplement lacked standing to seek injunctive relief since consumer was already fully aware of seller's alleged false advertising); *Elkind v. Revlon Consumer Prods. Corp.*, No. 14-CV-2484, 2015 WL 2344134, at *3 (E.D.N.Y. May 14, 2015) (Plaintiffs did not have standing to seek injunctive relief because they were "aware of the alleged misrepresentations that they challenge[d], so there [wa]s no danger that they will again be deceived by them"); *Cattie v. Wal–Mart Stores, Inc.*, 504 F. Supp. 2d 939, 951 (S.D. Cal. 2007) ("It is unclear how prospective relief will redress [plaintiff's] injury since she is now fully aware of [alleged false advertising].").

### J. Plaintiffs' Nationwide Allegations are Facially Defective.

The court should decide "[a]t an early practicable time" whether a class action should be certified. Fed. R. Civ. P. 23(c)(1)(A). To that end, a defendant may file a Rule 12 motion to strike class allegations in a complaint when those allegations are so facially deficient that discovery is unnecessary to consider their merits. *See* Fed. R. Civ. P. 23(d)(1)(D); *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011). "To say that a defendant may freely move for resolution of the class-certification question whenever it wishes," however, "does not free the district court from the duty of engaging in a 'rigorous analysis' of the question," *Pilgrim*, 660 F.3d at 949, one which "calls for an exercise of judgment" by the court. *Id.* at 946.

Plaintiffs bring state-law claims of breach of express warranty (Count II), breach of implied warranty of merchantability (Count III), and unjust enrichment (Count IV) on behalf of a putative "Nationwide Class." Compl. ¶ 36. The putative class includes "all persons residing in the United States and its territories who, during the maximum period of time permitted by law, purchased IAMS Food primarily for personal, family or household purposes, and not for resale." *Id.*

To maintain this nationwide class, Plaintiffs must prove, *inter alia*, that common issues of

16

fact and law predominate over individual issues. Fed. R. Civ. P. 23(b)(3).[10] Common issues of law cannot predominate if adjudication of the class claims would require the application of numerous states' varying warranty and unjust enrichment laws. *See, e.g., Pilgrim*, 660 F.3d 943, 947 (6th Cir. 2011) (dismissing Plaintiffs' class claims because they were "governed by different States' laws, a largely legal determination, and no proffered or potential factual development offer[ed] any hope of altering that conclusion"); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 17-18 (7th Cir. 2002). To that end, the Sixth Circuit has concluded that if "more than a few of the laws of the fifty states differ, the district judge would face an impossible task of instructing a jury on the relevant law." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996). Such is the case here.

### 1.    Varying Laws of 50 States Govern the Nationwide Class Claims.

Federal courts sitting in diversity must apply the choice-of-law rules of the forum state. *See Tele-Save Merch. Co. v. Consumers Distrib. Co.,* 814 F.2d 1120, 1122 (6th Cir. 1987). "Tennessee has adopted the 'most significant relationship' approach of the Restatement (Second) of Conflict of Laws," such that "the law of the state where the injury occurred will be applied unless some other state has a more significant relationship to the litigation." *Wahl v. Gen. Elec. Co.*, 983 F. Supp. 2d 937, 945 (M.D. Tenn. 2013), *aff'd*, 786 F.3d 491 (6th Cir. 2015) (citation and internal quotation marks omitted). In consumer protection actions, the state with the most significant

---

[10] Plaintiffs' proposed class is inappropriate for certification under Fed. R. Civ. P. 23(b)(1)(A) because there is no allegation suggesting that inconsistent or varying adjudications with respect to individual members of the class would establish incompatible standards of conduct for the party opposing the class. *Pettrey v. Enterprise Title Agency, Inc.*, 241 F.R.D. 268, 282 (N.D. Ohio 2006). Nor is certification under Fed. R. Civ. P. 23(b)(1)(B) appropriate due to the absence of a traditional "limited fund." *Id.* Similarly, Plaintiffs' proposed class is unsuitable for certification under Fed. R. Civ. P. 23(b)(2) because Plaintiffs lack standing to seek an injunction and because an injunctive-relief class is never appropriate where, as here, the primary relief sought is pecuniary. *Id.* at 283. Thus, Plaintiffs may therefore only rely upon Fed. R. Civ. P. 23(b)(3).

17

relationship to the litigation is generally the purchase state. *Premium Freight Mgmt., LLC v. PM Engineered Sols., Inc.*, 906 F.3d 403, 408 (6th Cir. 2018) ("[T]he state with the 'strongest interest' in regulating unfair trade practices, whether liability is imposed or foreclosed, is the state where the harm occurred."); *In re Skelaxin (Metaxalone) Antitrust Litig.*, 299 F.R.D. 555, 587 (E.D. Tenn. 2014) ("[C]onsumer protection laws typically aim to compensate consumers rather than police corporate conduct."); *In re Flonase Antitrust Litig.,* 815 F. Supp. 2d 867, 883 (E.D. Pa. 2011) ("[P]urchase states have a serious interest in applying their law" to compensate consumers for "transactions[s] occurring in their states.").

As such, Tennessee's choice-of-law rules would require the Court to analyze each putative class member's claim under the law of the state where IAMS Health was purchased. Plaintiffs' allegations cover purchases made in all 50 states, Compl. ¶¶ 33-36, and therefore require application of the laws of all 50 states. Rule 23(b)(3)'s predominance requirement cannot be met.

### 2. Substantial Variations Among State Law Precludes a Finding of Predominance.

Plaintiffs bear the burden of conducting an extensive conflicts analysis and showing that state law variations do not present insurmountable obstacles to certification. *See Thompson v. Cnty. of Medina*, 29 F.3d 238, 241 (6th Cir. 1994).[11] It is already clear they cannot do so. *See Pilgrim*, 660 F.3d at 949; *see also Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 674 (7th Cir. 2001) ("Differences of [state law] cut strongly against nationwide classes . . . ."); *Castano v. American Tobacco Co*., 84 F.3d 734, 741 (5th Cir. 1996) ("In a multi-state class action, variations in state law may swamp any common issues and defeat predominance."); *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 627 (3d Cir. 1996) ("[B]ecause we must apply an individualized choice of law

---

[11] *See also Spence v. Glock, Ges.m.b.H.*, 227 F.3d 308, 313 (5th Cir. 2000); *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1017 (D.C. Cir. 1986) (*quoting In re School Asbestos Litigation*, 789 F.2d 996 (3rd Cir. 1986)).

18

analysis to each plaintiff's claims, the proliferation of disparate factual and legal issues is compounded exponentially."); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189–90 (9th Cir. 2001).

### a. Warranty Laws Differ Substantially by State.

As to warranties, the states clash in numerous and significant ways. *See*, *e.g.*, *Darisse v. Nest Labs, Inc.*, No. CV 14-01363-BLF, 2016 WL 4385849 at *11–12 (N.D. Cal. Aug. 15, 2016) (collecting cases and listing differences in breach of warranty requirements across jurisdictions). For instance, states require "different levels of knowledge and reliance from Plaintiffs." *Camey v. Force Factor, LLC*, NO. 14-14717-RWZ, 2016 WL 10998440, at *4 (D. Mass. May 16, 2016). "Several states require that a plaintiff show actual knowledge and reliance." *Id.* Others do not. Minnesota, Kentucky, New Hampshire, Florida, Mississippi, and Rhode Island law require a showing of actual reliance. *See Hendricks v. Callahan*, 972 F.2d 190, 193 (8th Cir. 1992); *Overstreet v. NordenLabs., Inc.*, 669 F.2d 1286, 1289-91 (6th Cir. 1982); *Hagenbuch v. Snap-On Tools Corp.*, 339 F. Supp. 676, 680 (D.N.H. 1972); *State Farm Ins. Co. v. Nu Prime Roll-A-Way of Miami, Inc.*, 557 So. 2d 107, 108-09 (Fla. Dist. Ct. App. 1990); *Global Truck & Equip. Co. v. Palmer Mack. Works, Inc.*, 628 F. Supp. 641, 651 (N.D. Miss. 1986); *Thomas v. Amway Corp.*, 488 A.2d 716, 720 (R.I. 1985). Colorado does not require a showing of reliance, and New York and Washington do not require a showing of reliance in certain circumstances. *See Lutz Farms v. Asgrow Seed Co.*, 948 F.2d 638, 644-45 (10th Cir. 1991); *CBS Inc. v. Ziff–Davis Pub. Co.*, 75 N.Y.2d 496, 503 (1990); *Baughn v. Honda Motor Co.*, 727 P.2d 655, 669 (Wash. 1986).

Many states require contractual privity to sustain a warranty claim, whereas some do not. *Compare Flory v. Silver crest Indus. Inc.*, 633 P.2d 383, 387 (Ariz. 1981) (requiring privity); *Curl v. Volkswagen of Am., Inc.*, 871 N.E.2d 1141, 1147 (Ohio 2007) (same); *McMahon v. Advance Stores Co., Inc.*, 705 S.E. 131, 141 (W. Va. 2010) (same); *with Hyundai Motor Am. v. Goodin*, 822

19

N.E.2d 947, 959 (Ind. 2005) (not requiring privity); *Fortune View Condo. Ass'n v. Fortune Star Dev. Co.*, 151 Wash. 2d 534, 541 (Wash. 2004) (same).

A nationwide class pursuing a warranty theory would lump together Plaintiffs who—depending on their state—may or may not have to make individualized showings of knowledge and reliance. A nationwide class would similarly mix Plaintiffs who—depending on their state—may or may not be able to assert claims given distinct privity requirements. Determining which claims could go forward would require plaintiff-by-plaintiff inquiries for claims originating from privity jurisdictions. On both the express and implied warranty theories, claim-specific inquiries "would dwarf any common questions that the Plaintiffs' claim presents and would swamp this litigation to the point of unmanageability." *Camey*, 2016 WL 10998440, at *7; *see also Cole v. Gen. Motors Corp.*, 484 F.3d 717, 728 (5th Cir. 2007) (differences in warranty law precludes predominance); *Szabo*, 249 F.3d 672, 674 (7th Cir. 2001) ("[F]ew warranty cases ever have been certified as class actions—let alone as nationwide classes, with the additional choice-of-law problems that complicate such a venture."); *In re Bridgestone/Firestone*, 288 F.3d 1012, 1015 (7th Cir.2002) (stating a class action is not proper unless all litigants are governed by the same legal rules); *Georgine v. Amchem Prods., Inc.*, 83 F.3d 610, 627 (3d Cir. 1996) (predominance defeated by the number of differing state legal standards applicable to the controversy), *aff'd*, 521 U.S. 591 (1997); *Kaczmarek v. Int'l Bus. Machs. Corp.*, 186 F.R.D. 307, 312-13 (S.D.N.Y. 1999) ("[T]he diverse laws of the various states . . . have different standards and elements of proof for the claims of breach of express and implied warranty . . . [and therefore] [c]ommon questions of law do not predominate in this case."); *In re GMC Dex-Cool Prods. Liab. Litig.*, 241 F.R.D. 305, 324 (S.D. Ill. 2007) ("The variations in state law [of warranty] presented by this case defeat predominance and manageability.").

20

### b.      Unjust Enrichment Laws Differ Substantially by State.

The laws of unjust enrichment vary from state to state and require individualized proof of causation. *See*, *e.g.*, *In re Sears, Roebuck & Co. Tools Mktg & Sales Practices Litig.*, Nos. 05-C-4742, 05-C-2623, 2006 WL 3754823, at *1 n.3 (N.D. Ill. Dec. 18, 2006) ("[U]njust enrichment is a tricky type of claim that can have varying interpretations even by courts within the state, let alone amongst the fifty states."). "[C]ountless courts have found [that] the states' different approaches to, or elements of, unjust enrichment are significant." *Rapp v. Green Tree Servicing, LLC*, 302 F.R.D. 505, 513 (D. Minn. 2014) (quotation omitted) (collecting cases).

"[S]ome states consider unjust enrichment a remedy at law, while other states consider it an equitable claim." *Clay v. American Tobacco Co.*, 188 F.R.D. 483, 501 (S.D. Ill. 1999). Some states only allow a claim of unjust enrichment when no adequate legal remedy exists. *See Thompson v. Bayer Corp.*, No. 4:07-CV-00017-JMM, 2009 WL 362982, at *6 (E.D. Ark. Feb. 12, 2009) (collecting cases of states that do not allow unjust enrichment claims to survive if there is an adequate remedy at law). And, some "states do not specify the misconduct necessary to proceed, while others require that the misconduct include dishonesty or fraud." *Clay v. American Tobacco Co.*, 188 F.R.D. 483, 501 (S.D. Ill. 1999) (citations omitted). For instance, unjust enrichment reaches even innocent defendants in Massachusetts, i.e., those who have not behaved wrongfully. *See Stevens v. Nagel*, 831 N.E.2d 935, 939 (Mass. App. Ct. 2005). Alabama and Minnesota require "unconscionable conduct." *Mantiply v. Mantiply*, 951 So. 2d 638, 655 (Ala. 1989); *see also Park-Lake Car Wash, Inc. v. Springer*, 394 N.W.2d 505, 514 (Minn. Ct. App. 1896). And a third type of jurisdiction, exemplified by Montana and Oregon, requires simply "some element of misconduct." *Randolph V. Peterson, Inc. v. J.R. Simplot Co.*, 778 P.2d 879, 883 (Mont. 1989); *see also Tupper v. Roan*, 243 P.3d 50, 59 (Or. 2010). States further follow different rules to determine when an unjust enrichment claim begins to accrue, with some states starting from the transaction

date and other states from the date on which the plaintiff knew or should have known that the elements of the claim were present. *See In re Actiq Sales & Mktg. Practices Litig.*, 307 F.R.D. 150, 164 (E.D. Penn. 2015) (surveying cases).

The claim of unjust enrichment is packed with individual issues, which would make a nationwide class unmanageable. "Certification of a nationwide unjust enrichment class would aggregate Plaintiffs who may or may not have a cause of action against defendants who may or may not be able to assert an equitable or a statute of limitations defense." *Camey*, 2016 WL 10998440, at *8. These plaintiff-by-plaintiff issues "massively overwhelm whatever issues the Plaintiffs share, and it is for this reason that 'federal courts have generally refused to certify a nationwide class based upon a theory of unjust enrichment.'" *Id.*; *see also, e.g., Vega v. T–Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009) ("[C]ommon questions will rarely, if ever, predominate an unjust enrichment claim[.]"); *Ace Tree Surgery, Inc. v. Terex S. Dakota, Inc.*, No. 1:16-cv-00775-SCJ, 2019 WL 4655945, at *2-3 (N.D. Ga. Sept. 23, 2019) (state law variations precluded nationwide class action); *Bias v. Wells Fargo & Co.*, 312 F.R.D. 528, 540 (N.D. Cal. 2015) ("[C]ertification of a nationwide unjust enrichment class is improper under Rule 23 because material variations in state law would predominate."); *Vulcan Golf, LLC v. Google Inc.*, 254 F.R.D. 521, 532–33 (N.D .Ill. 2008) (differences in state law on unjust enrichment precluded certification of nationwide class) (citing numerous cases); *Bearden v. Honeywell Int'l, Inc.*, No. 3:09-01035, 2010 WL 1223936, at *10–11 (M.D. Tenn. Mar. 24, 2010) (striking class allegations related to unjust-enrichment claim, while noting that "class-wide adjudication is generally not appropriate for unjust enrichment claims" because individual issues would predominate).

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' class-action complaint with prejudice.

Dated: November 18, 2019

Respectfully submitted,

/s/*Ryan T. Holt*
Ryan T. Holt (BPR # 30191)
SHERRARD ROE VOIGT & HARBISON, PLC
150 3rd Avenue South, Suite 1100
Nashville, TN 37201
Tel: (615) 742-4512
Fax: (615) 742-4539
rholt@srvhlaw.com

David A. Forkner (*Pro Hac Application Forthcoming*)
WILLIAMS & CONNOLLY LLP
725 Twelfth Street, N.W.
Washington, DC 20005
Tel: (202) 434-5000
Fax: (202) 434-5029
dforkner@wc.com

*Attorneys for Mars Petcare U.S., Inc.*

## CERTIFICATE OF SERVICE

I, the undersigned attorney, hereby certify that on November 18, 2019, I electronically filed

a copy of the foregoing with the clerk of the District Court using the CM/ECF system, which sent

notification of such filing to all parties registered with the Court's electronic filing system.

Lisa A. White, TN Bar # 026658
Gregory F. Coleman, TN Bar # 014092
Adam Edwards, TN Bar #023253
Justin G. Day, TN Bar #033267
GREG COLEMAN LAW PC
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel: 865-247-0080
Fax:865-522-0049
greg@gregcolemanlaw.com
lisa@gregcolemanlaw.com
adam@gregcolemanlaw.com
justin@gregcolemanlaw.com

Gary E. Mason
Danielle L. Perry
J. Hunter Bryson
WHITFIELD BRYSON & MASON, LLP
5101 Wisconsin Avenue NW, Suite 305
Washington, DC 20016
Tel: 202-640-1168
Fax: 202-429-2294
gmason@wbmllp.com
dperry@wbmllp.com
hunter@wbmllp.com

Jonathan Shub
KOHN, SWIFT & GRAF, P.C.
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Tel: (215) 238-1700
jshub@kohnswift.com

Jeffrey S. Goldenberg
GOLDENBERG SCHNEIDER L.P.A.
One West Fourth Street, 18th Floor
Cincinnati, OH 45202
Tel: (513) 345-8291
Fax: (513) 345-8294
jgoldenberg@gs-legal.com

Charles E. Schaffer
LEVIN, SEDRAN & BERMAN, LLP
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500
Fax: (215) 592-4663
cschaffer@lfsblaw.com

Philip Friedman
FRIEDMAN LAW OFFICES
2001 L Street NW, Suite 400
Washington, DC 20036
Tel: (202)-293-4171

/s/*Ryan T. Holt*
Ryan T. Holt

24