## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

| | |
|---|---|
| ARNOLD FISHON, LILLY PEREZ, and TANA PARKER on behalf of themselves and all others similarly situated, | |
| Plaintiffs, | Case No. 3:19-cv-00816 |
| v. | **FIRST AMENDED** <br> **CLASS ACTION COMPLAINT** |
| MARS PETCARE US, INC., | **Demand for Jury Trial** |
| Defendant. | |

Plaintiffs Arnold Fishon, Lilly Perez, and Tana Parker (collectively, "Plaintiffs"), acting on behalf of themselves and all others similarly situated, bring this action for damages and equitable relief against Mars Petcare US, Inc. ("Defendant").

### NATURE OF THE CASE

1.      Defendant designed, manufactured, distributed, marketed, and sold IAMS Proactive Health Sensitive Skin & Stomach Grain-Free Recipe with Chicken & Peas ("IAMS Food") to Plaintiffs and Class Members.

2.      Dogs can—and often do—have allergic reactions to certain foods, including those that contain grains, such as corn, wheat, or soy. Accordingly, an important consideration for consumers, including Plaintiffs and Class Members, when purchasing pet foods is that certain ingredients are omitted from their pet's food.

3.      Consumers are willingly to pay a premium for IAMS Food because they rely on Defendant's representations that IAMS Food is specifically formulated for the particular health needs of their dogs, that IAMS Food conforms to its ingredient list, and that IAMS adheres to quality and manufacturing standards.

4.      However, independent testing of IAMS Food confirms that Defendant's representations about its formulation and ingredients are false. Contrary to the claims on its

1

packaging, IAMS Food does, in fact, contain significant amounts of both corn (a grain) and soy protein.

## THE PARTIES

5.      Plaintiff Arnold Fishon is a citizen of New York and resides in Hauppage (Suffolk County).

6.      Plaintiff Lilly Perez is a citizen of Tennessee and resides in Middleton Loop (Hardeman County).

7.      Plaintiff Tana Parker is a citizen of Virginia and resides in Accomac (Accomack County).

8.      Defendant Mars Petcare US, Inc. is a for-profit corporation, organized and existing under the laws of the State of Delaware.  Defendant has its National Headquarters in Franklin (Williamson County), Tennessee. Defendant designs, manufactures, markets, and sells IAMS Food online and through third-party retailers throughout the United States.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  There are at least 100 members in the proposed class, the aggregated claims of the individual class members exceed the sum or value of $5,000,000.00 exclusive of interest and costs, and some of the members of the proposed class are citizens of states different from Defendant.

10.     This Court may exercise jurisdiction over Defendant Mars Petcare US, Inc. because its headquarters is located in Tennessee and it is registered to conduct business in Tennessee.

11.     Defendant has sufficient minimum contacts in Tennessee. Defendant intentionally avails itself of the markets within Tennessee through the promotion, sale, marketing, and distribution of the IAMS Food, which renders this Court's exercise of jurisdiction necessary and proper.

12.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendant is headquartered here.

2

# FACTUAL ALLEGATIONS

**Plaintiff Arnold Fishon**

13.     Plaintiff Arnold Fishon purchased a 4 lb. bag of IAMS Food for approximately $13, three times every month starting in 2016. He also purchased a bag from Amazon on January 15, 2019 for $10.94.

14.     Plaintiff Fishon fed IAMS Food to his dog, Melina (a 3-year old beagle mix).

15.     Plaintiff Fishon later discovered that the IAMS Food he purchased for Melina was not made with a "Grain Free Recipe," that Defendant's "No Grains" and "No Soy" representations were false, that IAMS Food is not actually "[t]ailored for dogs with grain sensitivities," and that IAMS Food is not "without any corn" as IAMS specifically represents on the front and back of its packaging as well as on the product website.

16.     In 2019, Plaintiff Fishon stopped feeding Melina IAMS Food when Melina began having stomach issues, diarrhea, and whimpering after eating.

17.     Prior to purchasing the IAMS Food, Plaintiff Fishon reviewed the product packaging. It touted that the product featured a "Grain Free Recipe" containing "No Grains" and "No Soy." According to the packaging, IAMS Food is "[t]ailored for dogs with grain sensitivities," and made "without any corn." Plaintiff Fishon relied upon these representations in deciding to purchase IAMS Food.

18.     Plaintiff Fishon also conducted independent online research.  This included reviewing similar grain-free representations made on IAM's website, researching WebMd for information regarding how certain ingredients (especially grain) may negatively affect dogs, and watching videos of focus groups discussing the benefits of grain-free food for dogs.  Plaintiff Fishon relied upon the grain-free representations on Defendant's website in deciding to purchase IAMS Food.

19.     During this same period time, based on the false and misleading claims, warranties, representations, advertisements, and other marketing by Defendant, Plaintiff Fishon reasonably believed that IAMS Food contained not grain, corn, or soy protein.

3

20.     Plaintiff Fishon relied on Defendant's misrepresentations and omissions in choosing to purchase IAMS Food, and would not have purchased it over alternative products, or would have paid substantially less for it, had he known that Defendant's representations about its ingredients were false and misleading.

21.     Based on Defendant's misrepresentations, omissions and deceptive conduct, Plaintiff Fishon purchased a product that had less value than what he paid, and he has accordingly suffered legally cognizable damages proximately caused by Defendant's misconduct.

**Plaintiff Lilly Perez**

22.     Plaintiff Lilly Perez purchased IAMS Food every two weeks from PetSmart and spent approximately $600 in total on the food.

23.     After feeding her dog IAMS Food, Plaintiff Perez discovered that the food was not a "Grain Free Recipe," that Defendant falsely represented it contained "No Grains" and "No Soy," that the product was not "[t]ailored for dogs with grain sensitivities," and that the product was not "without any corn" as was represented on the front and back of the packaging that she purchased.

24.     Prior to purchasing the IAMS Food, Plaintiff Perez reviewed the product packaging. It touted that the product featured a "Grain Free Recipe" containing "No Grains" and "No Soy." According to the packaging, IAMS Food is "[t]ailored for dogs with grain sensitivities" and made "without any corn." Plaintiff Perez relied upon these representations on the packaging in deciding to purchase IAMS Food.

25.     Plaintiff Perez has a PhD in animal husbandry and conducted extensive research online regarding the benefits of the IAMS Food prior to purchasing the product for her dog. On the internet, she found additional representations from Defendant that IAMS Food is "Grain Free" and "Soy Free." Plaintiff Perez specifically relied on those representations in deciding to purchase the product.

26.     During that time, based on the false and misleading claims, warranties, representations, advertisements, and other marketing by Defendant, Plaintiff Perez reasonably believed that IAMS Food contained no grain, corn, or soy protein.  Plaintiff Perez relied on

4

Defendant's misrepresentations and omissions in making the purchases, and would not have purchased it over alternative products, or would have paid substantially less for it, had she known that Defendant's representations were false and misleading.

27. Based on Defendant's misrepresentations, omissions and deceptive conduct, Plaintiff Perez purchased a product that had less value than what she paid, and she has accordingly suffered legally cognizable damages proximately caused by Defendant's misconduct.

**Plaintiff Tana Parker**

28. Plaintiff Parker purchased an 8 lb. bag of IAMS Food three to four times every month from approximately 2013 to mid-2018.

29. After purchasing this dog food, Plaintiff Parker fed it to her dogs Cooter, a 6-year old boxer, and Bella, a 9-year old boxer

30. After feeding the IAMS Food to her dogs, Plaintiff Parker discovered that it was not a "Grain Free Recipe," that Defendant misleadingly advertised it as containing "No Grains" and "No Soy," that it was not "[t]ailored for dogs with grain sensitivities," and it is not made "without any corn" as was represented on the front and back of the packages that she purchased, as well as on the product website.

31. In mid-2018, Plaintiff Parker stopped feeding her dogs IAMS Food when they started showing symptoms of allergies and began to itch. Plaintiff Parker went to the vet ten times to try and understand what caused her dogs itching.

32. Prior to purchasing the IAMS Food, Plaintiff Parker reviewed the product packaging. It touted that the product featured a "Grain Free Recipe" containing "No Grains" and "No Soy." According to the packaging, IAMS Food is "[t]ailored for dogs with grain sensitivities" and was made "without any corn." Plaintiff Parker relied upon these representations on the packaging in deciding to purchase IAMS Food.

33. Also, prior to purchasing the IAMS Food, Plaintiff Parker research IAMS Food online and found similar representations from Defendant on the product website. Plaintiff Parker also relied upon these representations in deciding to purchase IAMS Food.

34.     During that time period, based on the false and misleading claims, warranties, representations, advertisements, and other marketing by Defendant, Plaintiff Parker reasonably believed that IAMS Food did not contain any grain, corn, or soy protein.  Plaintiff Parker relied on Defendant's representations and omissions in deciding to purchase IAMS Food, and would not have purchased it over alternative products, or would have paid substantially less for it, had she known that Defendant's representations of the ingredients were false and misleading.

35.     Based on Defendant's misrepresentations, omissions and deceptive conduct, Plaintiff Parker purchased a product that had less value than what she paid, and she has accordingly suffered legally cognizable damages proximately caused by Defendant's misconduct.

## The "Grain Free" and "Soy Free" Misrepresentations

36.     As described above and below, Defendant has engaged in an extensive, nationwide, uniform marketing and advertising campaign that misrepresents, among other things, the ingredients and benefits of IAMS Food.

37.     Defendant proudly declares the benefits of IAMS Food on its website, which states: "Our quality, easily digestible ingredients provide your dog with healthy skin, a healthy coat, and strong bones."[1]

38.     Defendant highlights as IAMS Food's primary selling point that it contains "No Wheat, No Soy, No Artificial Preservatives," and claims that the product has a "Grain Free Recipe."[2]

---

[1] *Iams Proactive Health Grain Free Dry Dog Food Recipe with Real Chicken and Peas*, IAMS, https://www.iams.com/dog-food/proactive-health-dry-dog-food-grain-free-chicken-peas (last visited July 18, 2019).  This webpage has been removed from the Defendant's website since this action was commenced.

[2] *See id.*

6



39.     As a selling point, Defendant also touts that IAMS Food is "[t]ailored for dogs with grain sensitivities."



40.     Defendant's product has "Grain Free" and "Tailored for Dogs with Grain Sensitivities" prominently displayed on the front of each bag.



41.     On the back of each bag, it states "Why IAMS Grain Free Recipe? Not all dogs are the same, so why feed them the same generic food? The IAMS brand understands that  dogs with grain sensitives have unique needs. That's why we've crafted our grain free recipe without any corn, wheat or soy, and added a tailored blend of wholesome fiber and natural prebiotics to support healthy digestion. This premium, grain free recipe will allow your dog to be at their best, today and every day."

8



42. In addition, the back of the IAMS Food bag prominently states: "GRAIN FREE RECIPE" and "NO GRAINS[.]"



43.     As discussed throughout this Complaint, Defendant's representations about the IAMS Food ingredients are false.

44.     Defendant represents that IAMS Food is "GRAIN FREE" and contains "NO SOY."

45.     However, independent testing has revealed that IAMS Food does in fact contain significant amounts of corn, rice, wheat, and soy.[3]

46.     Defendant misrepresents the ingredients of IAMS food in order to collect a price premium from unsuspecting consumers.

### Defendant's Misrepresentations and Omissions are Material to Consumers

47.     Although pet foods vary in quality of ingredients, formula, manufacturing processes, and inspection quality, many dog owners choose to pay a premium to provide their dogs a grain-free and soy-free diet.  They do so to accommodate their dogs' food allergies or to provide additional health benefits to their dogs.

48.     Indeed, Defendant emphasizes the grain-free and soy-free characteristics of IAMS Food in its marketing, touting the benefits that this formulation provides for dogs that consume its food.  When pet owners buy grain-free and soy-free dog food, they often do so for nutritional or health reasons, such as to prevent a health issue or address nutritional deficiency that their dogs may be experiencing.

49.     When products, such as IAMS Food, contain non-conforming ingredients, it defeats the very purpose of buying "grain-free" and "soy-free" products.

50.     Defendant's omissions and representations are not only material but also false, misleading, and reasonably likely to deceive the public.  This is true especially in light of the long-standing campaign by Defendant to market IAMS Food as healthy and beneficial to dogs who have "unique needs" and "grain sensitivities," to induce consumers such as Plaintiffs to purchase the products.

51.     Defendant's statements, partial disclosures, and omissions are false, misleading, and crafted to deceive the public into believing that IAMS Food contains no grain, corn, or soy.

---

[3] A copy of the testing results is attached as Exhibit A.

10

52.     Defendant knew or should have reasonably expected that the presence of corn and soy in its IAMS Food is something an average consumer would consider material when purchasing dog food that is marketed and sold as containing no grain, corn, or soy.

53.     Thus, Defendant's omissions and representations are false, misleading, and reasonably likely to deceive the public and reasonable consumers, such as Plaintiffs and other members of the Class (as defined herein), who would have no reason to expect or anticipate that IAMS Food is not a "Grain Free," "No Corn," and "No Soy" recipe as promised by Defendant.

54.     Non-disclosure and concealment of the grains, corn, and soy in the IAMS Food coupled with the disclosures and/or misrepresentations by Defendant that the food is "Grain Free," and contains "No Grains," "No Corn" and "No Soy" is intended to and does, in fact, cause consumers to purchase a product Plaintiffs and Class members would not have purchased,  or would have paid substantially less for, had Defendant disclosed the true quality and ingredients of the food.

55.     As a result of these false statements, omissions, and concealment, Plaintiffs and the Class purchased products that have less value than what was paid for, and they accordingly suffered legally cognizable damages proximately caused by Defendant's misconduct.

**Academic Research Confirms Pet Food Manufacturers Sell Non-Conforming Products**

56.     Before December 2014, little or no peer-reviewed academic research was published concerning the accuracy of dog food labels.

57.     In December 2014, a group of researchers found that only 18% of the pet food samples they tested completely matched the label claims with respect to the content of animal by-products. Thus, 82% of the products analyzed by the researchers contained non-conforming ingredients when compared to their label claims. The December 2014 study hypothesized that raw

materials used in the preparation of the canned food products contained multiple protein types and may have contributed to contamination.[4]

58.    In 2016, another study looked into the issue of whether vegan pet food contained non-conforming mammalian ingredients.[5] Vegan pet foods should contain no mammalian proteins or ingredients. The study found that half of the products tested contained non-conforming mammalian DNA in the products and suggested that manufacturers are ultimately responsible for maintaining adequate end product quality control to prevent such discrepancies between their ingredients and label claims.

59.    By 2018, research into pet food products' label claims and the presence of non-conforming ingredients intensified. Out of the 40 products analyzed in one study, the ingredients of only 10 products correctly matched their label.[6] Of the remaining 30 products, 5 did not contain the declared animal species ingredients and 23 others revealed the presence of undeclared animal species. Two of the products' labels were vague and their accuracy was indeterminable. This 2018 study found that mislabeling was an especially widespread problem in pet foods used for "elimination diets" (i.e. used to investigate food allergies). In this 2018 study, researchers suggested that manufacturers should pay particular attention to both the selection of raw material suppliers and the production processes for pet food due to the high risk of contamination.

60.    A second 2018 study (conducted in Europe) tested 11 canine and feline limited ingredient wet food products and found the presence of non-conforming ingredients in 54% of the

---

[4] *See* Ming-Kun Hsieh, *et al.*, *Detection of undeclared animal by-products in commercial canine canned foods: Comparative analyses by ELISA and PCR-RFLP coupled with slab gel electrophoresis or capillary gel electrophoresis*, J Sci Food Agric. 2016 Mar 30; 96(5):1659-65 (completed December 31, 2014).

[5] *See* K. Kanakubo, *et al.*, *Determination of mammalian deoxyribonucleic acid (DNA) in commercial vegetarian and vegan diets for dogs and cats*, Journal of Animal Physiology & Animal Nutrition, 2017 Feb;101 (1):70–74 (completed March 3, 2016).

[6] *See* Rebecca Ricci, *et al.*, *Undeclared animal species in dry and wet novel and hydrolyzed protein diets for dogs and cats detected by microarray analysis,* BMC Veterinary Research volume 14, Article number: 209 (2018).

products.[7] This study noted that other peer-reviewed studies had found that 80% of the dry foods analyzed contained non-conforming products. This study suggested that the high rate of cross-contamination in dietic limited-antigen wet canine and feline foods may be due to inadequate quality-control practices in the pet food industry and opined that the pet food industry has a legal obligation to produce safe food for consumers. The researchers hypothesized that pet food contamination occurs at two different points during manufacturing: 1) in the production of the feed materials (sometimes attributable to suppliers), and 2) during the actual production of the pet food via cross-contamination during manufacturing production lines, improper equipment cleaning, or other production deficiencies.

61.    In 2018, a third study summarized 18 studies, articles, and an abstract published between July 2017 and January 2018 related to pet food ingredient testing.[8] The authors concluded that mislabeling of pet food appears rather "common" in the limited ingredient diet products that are proposed for elimination diets. They also found that unexpected added ingredients are more frequently detected than those missing ingredients from the label. Since 2014, virtually all scholarly researchers have found that pet food sold to consumers frequently contains non-conforming ingredients, and significant discrepancies between pet food products' labeling and their actual ingredients appears to be commonplace among pet food manufacturers.

## CLASS ALLEGATIONS

### Class Definitions[9]

62.    Plaintiffs bring this action on behalf of themselves and a class ("Nationwide Class" or "Class") defined as follows:

---

[7] *See* Elena Pagani, *et al.*, *Cross-contamination in canine and feline dietetic limited antigen wet diets*, BMC Vet Res. 2018; 14: 283 (September 12, 2018).

[8] *See* Thierry Olivry and Ralf S. Mueller, *Critically Appraised topic on adverse food reactions of companion animals (5): discrepancies between ingredients and labeling in commercial pet foods*, BMC Vet Res. 2018 Jan 22;14(1):24 (completed January 22, 2018).

[9] Plaintiffs reserve the right to amend their class and subclass definitions as necessary to conform to facts learned through discovery.

All persons residing in the United States and its territories who, during the maximum period of time permitted by law, purchased IAMS Food primarily for personal, family or household purposes, and not for resale.

63. Alternatively, Plaintiff Arnold Fishon brings this action on behalf of himself and the members of the following subclass ("New York Subclass"):

All persons residing in New York who, during the maximum period of time permitted by law, purchased IAMS Food primarily for personal, family or household purposes, and not for resale.

64. Alternatively, Plaintiff Lilly Perez brings this action on behalf of herself and the members of the following subclass ("Tennessee Subclass"):

All persons residing in Tennessee who, during the maximum period of time permitted by law, purchased IAMS Food primarily for personal, family or household purposes, and not for resale.

65. Alternatively, Plaintiff Tana Parker brings this action on behalf of herself and the members of the following subclass ("Virginia Subclass"):

All persons residing in Virginia who, during the maximum period of time permitted by law, purchased IAMS Food primarily for personal, family or household purposes, and not for resale.

66. Specifically excluded from these definitions are: (1) Defendant, any entity in which Defendant has a controlling interest, and its legal representatives, officers, directors, employees, assigns and successors; (2) the Judge to whom this case is assigned and any member of the Judge's staff or immediate family; and (3) Class Counsel.

67. As used herein, "Class Members" shall mean and refer to the members of the Nationwide Class and any of the Subclasses, including Plaintiffs.

68. Plaintiffs seek only damages and equitable relief on behalf of themselves and the Class Members. Plaintiffs disclaim any intent or right to seek any recovery in this action for personal injuries, wrongful death, or emotional distress suffered by Plaintiffs and/or the Class Members.

14

69.     Numerosity: Although the exact number of Class Members is uncertain and can only be ascertained through appropriate discovery, the number is great enough such that joinder is impracticable.  The disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.

70.     Typicality: The claims of the representative plaintiffs are typical in that Plaintiffs, like all Class Members, purchased IAMS Food that was manufactured and distributed by Defendant.  Plaintiffs, like all Class Members, have been damaged by Defendant's misconduct in that, *inter alia*, they have incurred or will continue to incur damage due to purchasing a product that contained ingredients (corn, soy, and grain) that Defendant represented were absent from the product. Furthermore, the factual bases of Defendant's misconduct are common to all Class Members and represent a common thread of fraudulent, deliberate, and negligent misconduct resulting in injury to all Class Members.

71.     Commonality: There are numerous questions of law and fact common to Plaintiffs and Class Members.  These common legal and factual issues include the following:

     a)     Whether IAMS Food contains corn, soy, or grain;

     b)     Whether Defendant's "GRAIN FREE" and "SOY FREE" representations are false;

     c)     Whether Defendant's "GRAIN FREE" and "SOY FREE" representations are misleading;

     d)     Whether Defendant expressly warranted that the IAMS Food would conform to its "GRAIN FREE" and "SOY FREE" representations;

     e)     Whether Defendant impliedly warranted that IAMS Food conforms to its "GRAIN FREE" and "SOY FREE" representations;

     f)     Whether Defendant breached its warranties by making the representations above;

     g)     Whether Defendant was unjustly enriched by making the representations and omissions above;

15

h)      Whether Defendant's actions as described above violated the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*;

i)      Whether Defendant's actions as described above violated state consumer protection laws as alleged herein;

j)      Whether Defendant should be required to make restitution, disgorge profits, reimburse losses, pay damages, and pay treble damages as a result of the above described practices.

72.      <u>Adequate Representation</u>: Plaintiffs will fairly and adequately protect the interests of Class Members. Plaintiffs have retained attorneys experienced in the prosecution of class actions, including consumer and product defect class actions, and Plaintiffs intend to prosecute this action vigorously.

73.      <u>Predominance and Superiority</u>: Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Absent a class action, Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.  Because of the relatively small size of Class Members' individual claims, it is likely that few Class Members could afford to seek legal redress for Defendant's misconduct.  Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy.  Class treatment of common questions of law and fact would also be a superior method to multiple individual actions or piecemeal litigation in that class treatment will conserve the resources of the courts and the litigants and will promote consistency and efficiency of adjudication.

74.      Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

16

# COUNT 1
## VIOLATION OF MAGNUSON-MOSS WARRANTY ACT
### (15 U.S.C. § 2301, *et seq.*)
### (On Behalf of The Class)

75.     Plaintiffs bring this count on behalf of themselves and the Class and incorporate the allegations above, as if fully included herein.

76.     As alleged above, this Court has original jurisdiction over this matter based upon the requirements of CAFA; therefore, the Court has alternate jurisdiction over the Plaintiffs' Magnuson-Moss Warranty Act ("MMWA") claims.

77.     Plaintiffs and the Class assert state law warranty claims, as permitted under section 2310(d) of the MMWA.

78.     The MMWA allows consumers to enforce state-law written and implied warranties in federal court, borrowing state law causes of action.

79.     When the MMWA claim is premised on borrowed state-law claims, the MMWA claim stands or falls with the state-law claims.

80.     IAMS Food is a consumer product as defined in 15 U.S.C. § 2301(1).

81.     Plaintiffs and Class members are consumers as defined in 15 U.S.C. § 2301(3).

82.     Plaintiffs purchased IAMS Food costing more than $5 and their individual claims are greater than $25 as required by 15 U.S.C. §§ 2302(e) and 2310(d)(3)(A).

83.     Defendant is a supplier and warrantor as defined in 15 U.S.C. §§ 2301(4) and (5). Each of the state codes defines a warrantor as "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." N.Y. U.C.C. Law § 2-313(1)(a); Tenn. Code Ann. § 47–2–313(1)(a); Va. Code Ann. § 8.2-313(1)(a).

84.     In connection with the sale of IAMS Food, Defendant issued written warranties as defined in 15 U.S.C. § 2301(6) and the corresponding sections of the state statutes, which warranted that the product conformed to its representations that it did not contain corn, grain, or soy.

17

85.     Defendant breached these written warranties because IAMS Food did in fact contain corn, grain, and/or soy.

86.     By reason of Defendant's breach of the written warranties, Defendant violated the statutory rights of Plaintiffs and Class Members pursuant to the MMWA thereby damaging Plaintiffs and Class Members.

87.     On June 31, 2019, Plaintiffs sent a demand letter to Defendant which outlined how its conduct in misrepresenting the contents of IAMS Food regarding grain, soy and corn constituted a breach of the MMWA.[10]

## COUNT 2
## BREACH OF EXPRESS WARRANTY
### (On Behalf of The Class)

88.     Plaintiffs bring this count on behalf of themselves and the Class and incorporate the allegations above, as if fully included herein.

89.     Defendant sold and Plaintiffs purchased IAMS Food.

90.     Defendant represented in its marketing, advertising, and promotion of IAMS Food that its product was "grain free[,]" and contained "no grain," "no corn" and "no soy."

91.     Defendant made these representations and affirmations of fact to induce Plaintiffs to purchase IAMS Food.

92.     As described above, Plaintiffs were in fact induced to purchase the IAMS food by the representations and affirmations of fact that the IAMS food was "grain free," and contained "no grain," "no corn," and "no soy."

93.     Accordingly, Defendant's representations that IAMS Food was "grain free[,]" "soy free[,]" and "corn free" became part of the basis of the bargain between Defendant and Plaintiffs.

94.     IAMS Food did not conform to Defendant's representations and affirmations of fact and warranties regarding grain, soy, and corn because at all relevant times IAMS Food contained corn, grain, and soy.

---

[10] A copy of the June 31, 2019 Demand is attached as Exhibit B.

18

95.     At all times relevant hereto, the representations and affirmations of fact that IAMS food was "grain free," and contained "no grain," "no corn," and "no soy," were false in that the IAMS food contained corn, grain, and soy.

96.     On June 31, 2019, before the filing of the Complaint, Plaintiffs sent Defendant a pre-suit notice letter which outlined how its conduct in misrepresenting the contents of IAMS Food regarding grain, soy and corn constituted a breach of express warranty.[11]

97.     Despite Plaintiffs' pre-suit letter Defendants failed to remedy and cure their breach of warranty.

98.     As a direct and proximate result of Defendant's breaches of its express warranties and IAMS Food's failure to conform to the express representations, Plaintiffs and members of the Class have been damaged.  Plaintiffs and Class Members have suffered damages in that they did not receive the product they specifically paid for and that Defendant warranted it to be.  In addition, Plaintiffs and Class Members paid a premium for a product that did not conform to the Defendant's representations, promises, and warranties.

**COUNT 3**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(UCC § 2-314)**
**(On Behalf of The Class)**

99.     Plaintiffs bring this count on behalf of themselves and the Class and incorporate the allegations above, as if fully included herein.

100.    UCC § 2-314 states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."

101.    UCC § 2-314 has been adopted in:

      a.      Tennessee, Tenn. Code Ann. § 47-2-314;

      b.      Virginia, Va. Code Ann. § 8.2-314;

      c.      New York, N.Y. U.C.C. Law § 2-314 (McKinney).

---

[11] A copy of the June 31, 2019 Demand is attached as Exhibit B.

19

102.    As set forth above, Plaintiffs have standing to pursue this claim as they have suffered injury in fact and have suffered a loss of money or property as a result of Defendant's actions.

103.    Defendant is a "merchant" within the meaning of UCC § 2-104 because Defendant deals in the sale of IAMS Food and holds itself out as "having knowledge or skill peculiar to" dog foods such as the IAMS Food.

104.    Defendant sold and Plaintiffs purchased IAMS Food.

105.    Defendant has misled consumers into believing IAMS Food is "grain free" and contained "no grain," "no corn" and "no soy," when it in fact is not grain free and contains grains, corn (a grain), and soy. Defendant took advantage of Plaintiffs' trust and confidence in its IAMS brand, and deceptively included ingredients represented not to be within its products.

106.    To be merchantable, a good must "[p]ass without objection in the trade under the contract description," be "fit for the ordinary purposes for which such goods are used," be "adequately contained, packaged, and labeled as the agreement may require," and "[c]onform to the promises or affirmations of fact made on the container or label if any." UCC § 2-314.

107.    When sold by Defendant, IAMS Food was not merchantable, did not pass without objection in the trade under the label description, was not of adequate quality within that description, was not fit for the ordinary purposes for which such goods are used, and did not conform to the promises or affirmations of fact made on the container or label.  For these reasons, Defendant breached the implied warranty of merchantability.

108.    Within a reasonable time after Plaintiffs knew or should have known that the product was not fit for such purpose and/or was not otherwise merchantable as set forth above, Plaintiffs gave Defendant notice thereof.

109.    Defendant's intended beneficiaries of these implied warranties were ultimately Plaintiffs and Classes, not distributors who sold Defendant's IAMS Food.  In addition, Defendant's warranties provided on the labels of the IAMS Food are in no way designed to apply to the distributors that purchase the IAMS Food in bulk and then sell them on an individual basis to each

20

consumer. Individual consumers are the ones who ultimately review the bags of IAMS Food with the labels, which Defendant knows, prior to making any purchasing decisions. As a result, these warranties are specifically designed to benefit the individual consumer who purchases the IAMS Food.

110. Plaintiffs and the Classes sustained damages as a direct and proximate result of Defendant's breach in that Plaintiffs paid a premium for IAMS Food that they would not have otherwise spent. Plaintiffs also did not receive the value of the product they paid for—the IAMS Food is worthless or worth far less than Defendant represents due to its misbranding.

111. Plaintiffs and the Classes have sustained, are sustaining, and will sustain damages, as well as related damages alleged herein if Defendant continues to engage in such deceptive, unfair, and unreasonable practices.

112. Accordingly, Plaintiffs are entitled to injunctive relief, attorneys' fees and costs, and any other relief that the Court deems just and equitable.

## COUNT 4
## UNJUST ENRICHMENT
### (On Behalf of The Class)

113. Plaintiffs bring this count on behalf of themselves and the Class and repeat and incorporate the allegations above, as if fully included herein.

114. This claim is pleaded in the alternative to the express warranty claim and to all claims that rely upon the existence of a valid contract, the existence of which has not been established or conceded.

115. Plaintiffs conferred benefits on Defendant by purchasing IAMS Food at a premium price.

116. Defendant has knowledge of such benefits.

117. Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs and Class Members' purchases of IAMS Food. Defendant retaining these moneys under these circumstances is unjust and inequitable because Defendant falsely and misleadingly

represented that its IAMS Food contained no corn, grain, or soy, when, in fact, IAMS Food did contain corn, grain, and/or soy.

118.    Defendant's misrepresentations have injured Plaintiffs and Class Members because they would not have purchased (or paid a price premium) for IAMS Food had they known the true facts regarding IAMS Food's ingredients.

119.    Plaintiffs have no adequate remedy at law.

120.    Because it is unjust and inequitable for Defendant to retain such non-gratuitous benefits conferred on it by Plaintiffs and Class Members, Defendant must pay restitution to Plaintiffs and Class Members, as ordered by the Court.

**COUNT 5**
**VIOLATION OF THE NEW YORK DECEPTIVE TRADE PRACTICES ACT**
**(New York Gen. Bus. Law § 349)**
**(On Behalf of The New York Subclass)**

121.    Plaintiff Fishon asserts this Count on behalf of himself and the New York Subclass and incorporates the allegations above, as if fully included herein.

122.    By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by misrepresenting that IAMS Food did not contain corn, grain, or soy, when, in fact, IAMS Food contained corn, grain, and/or soy.

123.    Defendant's business practice of marketing, advertising, and promoting its IAMS Food in a misleading, inaccurate, and deceptive manner constitutes unconscionable commercial practices, deception, and misrepresentation and, accordingly, constitutes multiple, separate violations of Section 349 of the New York General Business Law.

124.    In marketing, advertising, and promoting IAMS Food to consumers, including Plaintiff Fishon and members of the New York Subclass, Defendant materially misrepresented and omitted key aspects regarding IAMS Food throughout the United States, including the State of New York.

125.    The foregoing deceptive acts and practices were directed at consumers.

22

126.   The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics, ingredients, benefits, quality, and nature of IAMS Food to induce consumers to purchase the same, and/or to pay a premium for the product.

127.   Defendant's unconscionable commercial practices, false promises, misrepresentations, and omissions set forth in this Complaint are material in that they relate to matters which reasonable persons, including Plaintiff Fishon and members of the New York Subclass, would attach importance to in making their purchasing decisions.

128.   Plaintiff Fishon and members of the New York Subclass were injured because: (a) they would not have purchased IAMS Food, or would not have purchased IAMS Food on the same terms, had they known that IAMS Food in fact contained corn, grain, or soy; (b) they paid a price premium for IAMS Food based on Defendant's false and misleading statements; and (c) IAMS Food did not have the characteristics and benefits promised because it contained corn, grain, and soy. As a result, Plaintiff Fishon and the New York Subclass have been damaged in an amount to be proven at trial, but not less than either the purchase price of IAMS Food or the difference in value between IAMS Food as advertised and IAMS Food as actually sold.

129.   On June 31, 2019, Plaintiffs sent a demand letter to Defendant which outlined how its conduct in misrepresenting the contents of IAMS Food regarding grain, soy and corn constituted a breach of New York Gen. Bus. Law § 349.[12]

130.   On behalf of himself and other members of the New York Subclass, Plaintiff Fishon seeks to enjoin the unlawful acts and practices described herein, to recover his actual damages or fifty dollars, whichever is greater. The Court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars if the action was willfully and knowingly, and may award reasonable attorneys' fees.

---

[12] A copy of the June 31, 2019 Demand is attached as Exhibit B.

**COUNT 6**
**<u>FALSE ADVERTISING</u>**
**(New York Gen. Bus. Law § 350)**
**(On Behalf of The New York Subclass)**

131.    Plaintiff Fishon brings this Count individually and on behalf of the members of the New York Subclass against Defendant and incorporates the allegations above, as if fully included herein.

132.    Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way and which constitutes false advertising in violation of Section 350 of the New York General Business Law.

133.    Defendant's false, misleading, and deceptive statements and representations of fact include but are not limited to the representations that IAMS Food was "grain free," and contains "no grain," "no corn," and "no soy." Defendant also directed these representations to consumers.

134.    Defendant's false, misleading, and deceptive statements and representations of fact—including but not limited to representations that IAMS Food was "grain free," and contains "no grain," "no corn," and "no soy"—were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

135.    Defendant's false, misleading, and deceptive statements and representations of fact—including but not limited to the representations that IAMS Food was "grain free," and contains "no grain," "no corn," and "no soy"—have resulted in consumer injury or harm to the public interest.

136.    Plaintiff Fishon and members of the New York Subclass have been injured because: (a) they would not have purchased IAMS Food had they known that the product contained corn, grain, or soy; (b) they paid a price premium for IAMS Food based on Defendant's false and misleading statements; and (c) IAMS Food did not have the characteristics and benefits promised because it contained corn, grain, and/or soy. As a result, Plaintiff Fishon and the New York Subclass have been damaged in an amount to be proven at trial, but not less than either the full

24

purchase price of IAMS Food, or the difference in value between IAMS Food as advertised and IAMS Food as actually sold.

137.    As a result of Defendant's false, misleading, and deceptive statements and representations of fact, including but not limited to the representations that IAMS Food was "grain free" and "soy free," Plaintiff Fishon and members of the New York Subclass have suffered and continue to suffer economic injury.

138.    Plaintiff Fishon and members of the New York Subclass suffered an ascertainable loss caused by Defendant's misrepresentations because they paid more for IAMS Food than they would have had they known the truth about the product.

139.    On June 31, 2019, Plaintiffs sent a demand letter to Defendant which outlined how its conduct in misrepresenting the contents of IAMS Food regarding grain, soy and corn constituted a breach of New York General Business Law Section 350.[13]

140.    On behalf of himself and other members of the New York Subclass, Plaintiff Fishon seeks to enjoin Defendant's unlawful acts and practices described herein, to recover all damages permitted by statute and reasonable attorneys' fees.

### COUNT 7
### <u>VIOLATIONS OF VIRGINIA CONSUMER PROTECTION ACT,</u>
### Va. Code Ann. § 59.1-196, *et seq*.
### (On Behalf of the Virginia Subclass)

141.    Plaintiff Tana Parker brings this Count on behalf of herself and the Virginia Subclass against Defendant and incorporates the allegations above, as if fully included herein.

142.    The Virginia Consumer Protection Act prohibits "[u]sing any . . . deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." Va. Code Ann. § 59.1-200(14).

---

[13] A copy of the June 31, 2019 Demand is attached as Exhibit B.

143. By the acts and conduct alleged herein, Defendant committed unfair or deceptive acts and practices by misrepresenting that IAMS Food did not contain corn, grain, or soy, when, in fact, IAMS Food did contain corn, grain, and/or soy.

144. Defendant's business practices of marketing, advertising, and promoting IAMS Food in a misleading, inaccurate, and deceptive manner constitutes unconscionable commercial practices, deception, and misrepresentations, and, thus, results in multiple, separate violations of Va. Code Ann. § 59.1-200(A).

145. In marketing, advertising, and promoting IAMS Food to consumers, including Plaintiff Parker and members of the Virginia Subclass, Defendant made the material misrepresentations and omissions set forth in this Complaint throughout the United States, including in the State of Virginia.

146. Defendant's false, misleading, and deceptive statements and representations of fact were and are directed at consumers.

147. Defendant's false, misleading, and deceptive statements and representations of fact were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

148. Defendant's false, misleading, and deceptive statements and representations of fact have resulted in consumer injury or harm to the public interest.

149. The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics, ingredients, benefits, quality, and nature of IAMS Food to induce consumers to purchase the same, and/or to pay a premium for the same.

150. Defendant's unconscionable commercial practices, false promises, misrepresentations, and omissions set forth in this Complaint are material in that they relate to matters which reasonable persons, including Plaintiff Parker and members of the Virginia Subclass, would attach importance in their purchasing decisions.

151. Plaintiff Parker and members of the Virginia Subclass were injured because: (a) they would not have purchased IAMS Food, or would not have purchased IAMS Food on the same

26

terms, had they known that the products in fact contained corn, grain, or soy; (b) they paid a price premium for IAMS Food based on Defendant's false and misleading statements; and (c) IAMS Food did not have the characteristics and benefits promised because it contained corn, grain, and soy. As a result, Plaintiff Parker and the Virginia Subclass have been damaged in an amount to be proven at trial, but not less than either the purchase price of IAMS Food or the difference in value between IAMS Food as advertised and IAMS Food as actually sold.

152. On behalf of herself and other members of Virginia Subclass, Plaintiff Parker seeks to enjoin the unlawful acts and practices described herein, to recover her actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

## RELIEF DEMANDED

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek a judgment against Defendant, as follows:

a. For an order certifying the Class and Subclasses under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as Class representatives and Plaintiffs' attorneys as Class Counsel;

b. For an order declaring that Defendant's conduct violates the statutes referenced herein;

c. For an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

d. For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e. For prejudgment interest on all amounts awarded;

f. For an order of restitution and all other forms of equitable monetary relief;

g. For injunctive relief as pleaded or as the Court may deem proper; and

h.    For an order awarding Plaintiffs and the Class their reasonable attorneys' fees, expenses and costs of suit.

**JURY TRIAL DEMANDED**

Plaintiffs demand a trial by jury on all claims so triable.

Dated: December 20, 2019        Respectfully submitted,

**GREG COLEMAN LAW PC**

*/s/ Lisa A. White*
Lisa A. White, TN Bar # 026658

Gregory F. Coleman, TN Bar # 014092
Lisa A. White, TN Bar # 026658
**GREG COLEMAN LAW PC**
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Tel: 865-247-0080
Fax: 865-522-0049
greg@gregcolemanlaw.com
lisa@gregcolemanlaw.com

Gary E. Mason *
Danielle L. Perry*
J. Hunter Bryson*
**WHITFIELD BRYSON & MASON, LLP**
5101 Wisconsin Avenue NW, Suite 305
Washington, DC 20016
Tel: 202-640-1168
Fax: 202-429-2294
gmason@wbmllp.com
dperry@wbmllp.com
hunter@wbmllp.com

Jonathan Shub*
**KOHN, SWIFT & GRAF, P.C.**
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Tel: (215) 238-1700
jshub@kohnswift.com

28

Jeffrey S. Goldenberg*
Todd B. Naylor*
**GOLDENBERG SCHNEIDER L.P.A.**
One West Fourth Street, 18th Floor
Cincinnati, OH 45202
Tel: (513) 345-8291
Fax: (513) 345-8294
jgoldenberg@gs-legal.com

Charles E. Schaffer*
**LEVIN, SEDRAN & BERMAN, LLP**
510 Walnut Street, Suite 500
Philadelphia, PA 19106
Tel: (215) 592-1500
Fax: (215) 592-4663
cschaffer@lfsblaw.com

Philip Friedman*
**FRIEDMAN LAW OFFICES**
2001 L Street NW, Suite 400
Washington, DC 20036
Tel: (202)-293-4175


*pro hac vice*

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, the undersigned attorney, hereby certifies that on December 20, 2019, I electronically filed a copy of the foregoing First Amended Complaint with the Clerk of the District Court using the CM/ECF system, which sent notification of such filing to all parties registered with the Court's electronic filing system.

| | |
|---|---|
| Ryan T. Holt, Esq.<br>SHERRARD ROE VOIGT & HARBISON, PLC<br>150 3rd Avenue South, Suite 1100<br>Nashville, TN 37201<br>T: 615-742-4512<br>rholt@srvhlaw.com<br><br>David A. Forkner, Esq.<br>WILLIAMS & CONNOLLY LLP<br>725 Twelfth Street, N.W.<br>Washington, DC 20005<br>T: 202-434-5000<br>dforkner@wc.com<br><br>Jonathan Shub, Esq.<br>KOHN, SWIFT & GRAF, P.C.<br>1600 Market Street, Suite 2500<br>Philadelphia, PA 19103<br>T: 215-238-1700<br>jshub@kohnswift.com<br><br>Charles E. Schaffer, Esq.<br>LEVIN, SEDRAN & BERMAN, LLP<br>510 Walnut Street, Suite 500<br>Philadelphia, PA 19106<br>T: 215-592-1500<br>cschaffer@lfsblaw.com | Gary E. Mason, Esq.<br>Danielle L. Perry, Esq.<br>J. Hunter Bryson<br>WHITFIELD BRYSON & MASON, LLP<br>5101 Wisconsin Avenue NW, Suite 305<br>Washington, DC 20016<br>T: 202-640-1168<br>gmason@wbmllp.com<br>dperry@wbmllp.com<br>hunter@wbmllp.com<br><br>Jeffrey S. Goldenberg, Esq.<br>GOLDENBERG SCHNEIDER L.P.A.<br>One West Fourth Street, 18th Floor<br>Cincinnati, OH 45202<br>T: 513-345-8291<br>jgoldenberg@gs-legal.com<br><br>Philip Friedman, Esq.<br>FRIEDMAN LAW OFFICES<br>2001 L Street NW, Suite 400<br>Washington, DC 20036<br>T: 202-293-4175 |

*/s/ Lisa W. White*
Lisa A. White