# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **ARNOLD FISHON, LILLY PEREZ, and** | ) | |
| **TANA PARKER on behalf of themselves** | ) | |
| **and all others similarly situated,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **No. 3:19-cv-00816** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **MARS PETCARE US, INC.** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Arnold Fishon, Lilly Perez, and Tana Parker (collectively, "Plaintiffs"), individually and on behalf of a putative class, brought this action against Mars Petcare US, Inc. ("Mars" or "Defendant") for allegedly misleading consumers by mislabeling a particular product line of dog food as grain and soy free. Before the Court is Mars' Motion to Dismiss and to Strike Plaintiffs' First Amended Complaint (Doc. No. 30), which has been fully briefed by the parties (Doc. Nos. 31, 37, 39).[1] For the following reasons, Mars' motion will be granted in part and denied in part.

## I.    FACTUAL ALLEGATIONS AND BACKGROUND[2]

Mars designs, manufactures, distributes, markets, and sells premium-priced dog food known as IAMS® Proactive Health Sensitive Skin & Stomach Grain-Free Recipe with Chicken &

---

[1] The parties filed Notices of Supplemental Authority (Doc. Nos. 40, 67) and responses (Doc. Nos. 48, 71), and Plaintiffs filed a reply (Doc. No. 56). Mars also filed a Motion to Strike or Disregard Portions of Plaintiffs' Reply (Doc. No. 57) arguing that Plaintiffs improperly made new arguments to support their opposition to Mars' motion to dismiss. But given that Mars accompanied its "motion to strike" with a 5-page memorandum of law and argument regarding the merits of this case (Doc. No. 58), the Court will deny Mars' motion and instead construe it as a sur-reply.

[2] The relevant background and facts necessary to resolve the pending motion to dismiss are drawn only from the First Amended Complaint (Doc. No. 27) and its attachments and are assumed to be

Peas ("IAMS Grain-Free Recipe"). (Compl. ¶ 1.) The front of each IAMS Grain-Free Recipe bag prominently states that the food is made with a "Grain Free Recipe" and is "Tailored for Dogs with Grain Sensitivities." (Id. ¶ 40.) The back of each bag also contains the phrases "Grain Free Recipe" and "No Grains[,]" and provides the following promotional paragraph about why dog owners should purchase IAMS Grain-Free Recipe over other dog food:

> Not all dogs are the same, so why feed them the same generic food? The IAMS brand understands that dogs with grain sensitivities have unique needs. That's why we've crafted our grain free recipe *without any corn, wheat or soy*, and added a tailored blend of wholesome fiber and natural prebiotics to support healthy digestion. This premium, grain free recipe will allow your dog to be at their best, today and every day.

(Id. ¶ 41–42 (emphasis added).) Mars' website made similar representations and stated that IAMS Grain-Free Recipe contains "No Wheat [and] No Soy[.]"[3] (Id. ¶¶ 37–38.)

Because "[d]ogs can—and often do—have allergic reactions to certain foods, including those that contain grains . . . wheat, or soy[,] . . . many dog owners choose to pay a premium to provide their dogs a grain-free and soy-free diet." (Id. ¶¶ 2–3, 47.) Thus, based on Mars' representations, Plaintiffs were willing to (and in fact did) purchase bags of IAMS Grain-Free Recipe at a premium price and feed it to their dogs. (Id. ¶¶ 13–35.) But "independent testing" revealed that Mars misled Plaintiffs because IAMS Grain-Free Recipe "does in fact contain significant amounts of corn, rice, wheat, and soy."[4] (Id. ¶¶ 43–45.)

---

true for purposes of ruling on the motion. See Erickson v. Pardus, 551 U.S. 89, 94 (2007). For ease of reference, the Court will refer to the First Amended Complaint as the "Complaint" or "Compl."

[3] Plaintiffs allege that the relevant "webpage has been removed from [Mars'] website since this action was commenced." (Compl. ¶ 37 n.1.)

[4] Plaintiffs have attached a copy of these "independent testing" results showing that a bag of IAMS Grain-Free Recipe consisted of 0.07% corn, 0.06% soy, 0.02% rice, and 0.001% wheat. (Doc. No. 27-1.)

2

As a result, Plaintiffs filed this action against Mars alleging that they suffered economic damages because they reasonably believed that IAMS Grain-Free Recipe contained no grain or soy protein, and they would not have purchased it over alternative products, or would have paid substantially less for it, had they known that Mars' representations about its ingredients were false. (Id. ¶¶ 21, 27, 35, 54–55.) The Complaint names Fishon (a New York resident), Perez (a Tennessee resident), and Parker (a Virginia resident), and asserts claims against Mars for violating the Magnuson-Moss Warranty Act and various state contract and consumer protection laws. The Complaint also states that this action is brought on behalf of the named Plaintiffs and either a nationwide class or, alternatively, New York, Tennessee, and Virginia subclasses. (Id. ¶¶ 62–65.)

Mars has now moved to dismiss the Complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted, as well as to strike Plaintiffs' nationwide class allegations. (Doc. No. 30.) Because these three requests involve different legal standards, the Court will address them as separate motions.

## II.     MOTION TO DISMISS UNDER RULE 12(b)(1) FOR LACK OF STANDING

### A.     Legal Standard

A motion to dismiss for lack of standing is properly characterized as a motion to dismiss for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). Forest City Residential Mgmt., Inc. ex rel. Plymouth Square Ltd. Dividend Hous. Ass'n v. Beasley, 71 F. Supp. 3d 715, 722–23 (E.D. Mich. 2014) (citing Stalley v. Methodist Healthcare, 517 F.3d 911, 916 (6th Cir. 2008)). "[W]here subject matter jurisdiction is challenged under Rule 12(b)(1), as it was here, the *plaintiff* has the burden of proving jurisdiction in order to survive the motion." Wayside Church v. Van Buren Cnty., 847 F.3d 812, 817 (6th Cir. 2017) (quoting Rogers v. Stratton Indus., Inc., 798 F.2d 913, 915 (6th Cir. 1986)).

"A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." Cartwright v. Garner, 751 F.3d 752, 759 (6th Cir. 2014) (citing United States v. Ritchie, 15 F.3d 592, 598 (6th Cir. 1994)). This distinction is important because if the defendant makes a facial attack, the Court must take all of the allegations in the complaint as true to determine "whether the plaintiff has *alleged* a basis for subject matter jurisdiction." Id. (emphasis added). But if the defendant makes a factual attack, the Court may consider and weigh evidence, including evidence outside of the pleadings, to determine whether the plaintiff has "carrie[d] the burden of establishing subject matter jurisdiction by a preponderance of the evidence." Ready for the World Inc. v. Riley, No. 19-10062, 2019 WL 4261137, at *2 (E.D. Mich. Sept. 9, 2019) (citing McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. 178, 189 (1936)).

B.    Analysis

Article III of the Constitution provides that the "judicial Power" extends only to "Cases" and "Controversies," U.S. Const. art. III, § 2, an element of which is standing. Spokeo, Inc. v. Robins, 136 S.Ct. 1540, 1547 (2016). "Although the term 'standing' does not appear in Article III, [the] standing doctrine is 'rooted in the traditional understanding of a case or controversy' and limits 'the category of litigants empowered to maintain a lawsuit in federal court[.]'" Buchholz v. Meyer Njus Tanick, PA, 946 F.3d 855, 861 (6th Cir. 2020) (quoting Spokeo, 136 S.Ct. at 1547). If no named plaintiff has standing, the Court lacks subject-matter jurisdiction to hear the case. See O'Shea v. Littleton, 414 U.S. 488, 495 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class.").

To establish Article III standing at the pleading stage, a plaintiff must allege facts plausibly demonstrating that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged

4

conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, 136 S.Ct. at 1547 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992)); see also Soehnlen v. Fleet Owners Ins. Fund, 844 F.3d 576, 581 (6th Cir. 2016). The plaintiff has the burden of demonstrating all three elements "separately for each form of relief sought." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 185 (2000).

Mars argues that this case should be dismissed for lack of standing because the Complaint does not plausibly allege that Plaintiffs suffered an injury in fact to recover damages or obtain injunctive relief.[5] "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, 136 S.Ct. at 1548 (quoting Lujan, 504 U.S. at 560). For an injury to be "concrete," it must be real, and not abstract, and for an injury to be particularized, it "must affect the plaintiff in a personal and individual way." Id. (citations omitted). Plaintiffs seeking injunctive relief must make an additional showing that they suffered "both past injury and a real and immediate threat of *future* injury." Mosley v. Kohl's Dep't. Stores, Inc., 942 F.3d 752, 756 (6th Cir. 2019) (citations and internal quotation marks omitted) (emphasis added).

As explained more fully below, the Court finds that Plaintiffs have plausibly alleged an Article III injury to seek damages, but they have not plausibly alleged a threat of future injury to seek injunctive relief.

1.      Standing to Seek Damages

Mars argues that Plaintiffs have not plausibly alleged a particularized Article III injury to claim damages because they have not explicitly alleged that they purchased or used any bag of

---

[5] Mars' challenge is best characterized as a facial attack on the sufficiency of the Complaint itself, meaning the Court must take all of the allegations in the Complaint as true for purposes of determining whether Plaintiffs have plausibly alleged standing. See Cartwright, 751 F.3d at 759.

5

IAMS Grain-Free Recipe that contained grain or soy. (Doc. No. 31 at 11–13.[6]) The Court disagrees.

Mars premises its argument on Wallace v. ConAgra Foods, Inc., an Eighth Circuit decision involving plaintiffs who claimed that they overpaid for supposedly kosher hot dogs because "some" of defendant's "beef products [were] not, as the label reads, '100% kosher.'" 747 F.3d 1025, 1027–28 (8th Cir. 2014). The Wallace court held that because plaintiffs expressly alleged that only "some" (as opposed to "*all* or even *most*") of defendant's beef products were mislabeled, they lacked Article III standing because "it is pure speculation to say the particular packages sold to the consumers were tainted by non-kosher beef[.]" Id. at 1030–31. The Eighth Circuit further held that "it is not enough for a plaintiff to allege that a product line contains a defect or that a product is at risk for manifesting this defect; rather, the plaintiffs must allege that *their* product *actually exhibited* the alleged defect." Id. at 1030 (citation and internal quotation marks omitted). But Wallace is obviously nonbinding, and subsequent decisions have recognized that following the Eighth Circuit's holding would lead to "bizarre result[s]." See, e.g., McCoy v. Nestle USA, Inc., 173 F. Supp. 3d 954, 964 (N.D. Cal. 2016) ("[I]t would be a bizarre result if sellers advertising food as halal or kosher, diamonds as conflict-free, or products as union-made could knowingly mix compliant and non-compliant products with impunity so long as there was no way for a buyer to trace the specific item he or she purchased back to the source. The Eighth Circuit [in Wallace] has nevertheless adopted that rule.").

Mars also relies on Pels v. Keurig Dr. Pepper, Inc., a Northern District of California decision finding that the plaintiff "failed to plead a particularized injury by failing to plead the

---

[6] For ease of reference, the Court will cite to the parties' briefs by the page numbers listed directly above the word "Filed" at the bottom of each page.

[Peñafiel mineral spring] water *he* purchased contained violative arsenic levels." No. 19-cv-03052-SI, 2019 WL 5813422, at *4–5 (N.D. Cal. Nov. 7, 2019). Critical to that decision, however, was the plaintiff's failure to allege that "all Peñafiel water comes from the same source[,]" meaning it was possible that some Peñafiel water was not contaminated with arsenic. Id. at *5. Without making "such a straightforward allegation[,]" the Pels court dismissed the complaint, without prejudice, for lack of standing.[7] Id.

Notably, this case is distinguishable from Wallace and Pels for the same reasons expressed in Rice-Sherman v. Big Heart Pet Brands, Inc., No. 19-cv-03613-WHO, 2020 WL 1245130 (N.D. Cal. Mar. 16, 2020). The plaintiffs in Rice-Sherman claimed that they paid a premium for Nature's "Grain Free" Recipe Dog Food because "independent testing" confirmed that, contrary to the defendant-manufacturer's representations, the food contained significant amounts of corn and soy protein. Id. at *1. Citing to Wallace and Pels, the defendant moved to dismiss the case for lack of Article III standing, arguing that the complaint failed "to link the independent testing (that allegedly confirms that the representations on Nature's Recipe Food are false) to the Nature's Recipe Food products [plaintiffs] purchased." Id. at *6. The district court denied defendant's motion, found that plaintiffs sufficiently pleaded Article III standing, and explained its reasoning as follows:

> By contrast [to Wallace and Pels], plaintiffs focus their allegations on a particular product, the Nature's Recipe Food, and allege that "independent testing of the Nature's Recipe Food confirms that [the alleged] representations are false," because "Nature's Food Recipe does, in fact, contain significant amounts of both corn and soy protein." [Defendant] takes issue with the fact that the allegations do[] not include the word "all" such that the [Complaint] could be read as alleging that *all* Nature's Food Recipe does, in fact, contain significant amounts of both corn and soy protein. Plaintiffs' omission of the word "all" is not fatal. A fair reading of

---

[7] The plaintiff in Pels subsequently filed a Second Amended Complaint alleging that "all of the Peñafiel Mineral Spring water is contaminated at the source[.]" Pels v. Keurig Dr. Pepper, Inc., No. 19-cv-03052-SI (N.D. Cal.), Doc. No. 57 at ¶ 6.

7

their [Complaint] shows that they allege that all Nature's Food Recipe products are falsely advertised. Nowhere in the [Complaint] do plaintiffs allude that some of Nature's Recipe Food is grain-free but that a subset of the product is not.

(Id. at *7 (citations omitted).)

Here, like in Rice-Sherman, Plaintiffs have alleged that "independent testing" confirms that IAMS Grain-Free Recipe "does, in fact, contain significant amounts of both corn (a grain) and soy protein." (Compl. ¶¶ 4, 45.) But unlike in Wallace and Pels, there is nothing in the Complaint to suggest that only *some* bags of IAMS Grain-Free Recipe contained these unwanted ingredients.[8] Thus, applying Rice-Sherman's reasoning to this nearly identical case, the Court concludes that a "fair reading" of the Complaint shows that Plaintiffs have alleged that *all* IAMS Grain-Free Recipe bags are falsely advertised. See Rice-Sherman, 2020 WL 1245130 at *7. And because Plaintiffs have alleged that all IAMS Grain-Free Recipe bags contain grain and soy, it necessarily follows that Plaintiffs have alleged that the bags *they* purchased also contained those ingredients. See Lujan, 504 U.S. at 561 (internal quotation marks and alterations omitted) ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a

_____

[8] Doss v. General Mills, Inc., 816 F. App'x 312 (11th Cir. 2020) (per curiam), a case Mars brought to the Court's attention by filing a Notice of Supplemental Authority (Doc. No. 67), is distinguishable for the same reasons. In Doss, the Eleventh Circuit affirmed the district court's order dismissing the case for lack of standing because the plaintiff had "not alleged that she purchased any boxes of Cheerios that contained any glyphosate, much less a level of glyphosate that is so harmful the Cheerios are presumptively unsafe and therefore worthless." 816 F. App'x at 314 (internal quotation marks omitted). But, as the district court explained, the Doss complaint suffered from the same pleading defects recognized in Wallace and Pels:

[Plaintiff] does not . . . even allege that the Cheerios she herself bought actually contain any glyphosate—just that some Cheerios that have been tested do. In fact, [plaintiff] even hedges her bets, saying that the Cheerios she herself purchased either "contained or *could contain* glyphosate." There is thus no allegation that the cereal she purchased even contains glyphosate, never mind harmful levels of it.

Doss v. General Mills, Inc., No. 18-61924-Civ-Scola, 2019 WL 7946028, at *2 (S.D. Fla. June 14, 2019) (citation omitted). Accordingly, the Court does not find Doss persuasive here.

motion to dismiss [courts] presume that general allegations embrace those specific facts that are necessary to support the claim."). That is enough to demonstrate a particularized injury in fact at this stage.

Mars urges the Court not to reach this conclusion, mainly by attacking the sufficiency of Plaintiffs' independent testing and the permissible inferences the Court can draw from those results. For example, Mars attempts to distinguish Rice-Sherman because, unlike in that case, Plaintiffs limited the scope of their allegations by attaching their test results of one IAMS Grain-Free Recipe bag, rather than merely alleging that they conducted unspecified "independent testing." (Doc. No. 48 at 2–3.) Not only does the Court disagree that there is a meaningful distinction between this case and Rice-Sherman or that these test results "clearly contradict" Plaintiffs' allegations, (see Doc. No. 31 at 1 n.1 (citing HMS Prop. Mgmt. Grp., Inc. v. Miller, 69 F.3d 537 (6th Cir. 1995)), but it also finds that Plaintiffs have made a *stronger* showing of Article III standing here by attaching their test results and substantiating their allegations with additional facts. See Gubala v. CVS Pharmacy, Inc., No. 14 C 9039, 2016 WL 1019794, at *8 (N.D. Ill. Mar. 15, 2016) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)) ("Plaintiff[s] may rely on the testing results attached to the amended complaint to nudge [their] claims based on" defendant's misrepresentations "'across the line from conceivable to plausible.'").

Mars further contends that it would be improper and unduly speculative to assume that just because *one* independently tested bag of IAMS Grain-Free Recipe contained grain and soy, it necessarily means that *all* bags (including the bags Plaintiffs purchased and used) were contaminated with those ingredients. (Doc. No. 31 at 11–13.) But the cases Mars cites in support of this argument are factually distinguishable and were decided in a different procedural posture. See Gaminde v. Lang Pharma Nutrition, Inc., No. 1:18-cv-300 (GLS/DEP), 2019 WL 1338724, at

*1–*3 (N.D.N.Y. Mar. 25, 2019) (sustaining defendant's *factual* challenge to standing and finding unduly speculative plaintiff's allegation that because one USDA study concluded that two CVS Krill Oil bottles purchased in Indiana and Missouri contained less than the stated amount of Omega-3 Krill Oil, the bottle that plaintiff purchased in New York must have as well); Fahey *ex rel.* D.C. v. Deoleo USA, Inc., No. 18-cv-2047 (CRC), 2018 WL 5840664, at *2–*3 (D.D.C. Nov. 8, 2018) (granting defendant's Rule 12(b)(6) motion to dismiss and finding that plaintiff's reliance on an "inconclusive," "subjective," and outdated California study could not support an inference that the particular bottle of extra virgin olive oil plaintiff purchased in D.C. was mislabeled as "extra virgin"). Moreover, Plaintiffs do "not need to prove [their] case at the pleading stage[,]" Gubala at *8, and other "[c]ourts have permitted consumer claims in nationwide class actions regarding product mislabeling to move forward based on limited testing, including a single test on a single sample of the product at issue." In re Herbal Supplements Marketing and Sales Practices Litig., No. 15-cv-5070, 2017 WL 2215025, at *12 (N.D. Ill. May 19, 2017) (collecting inter-district cases).

In sum, because the Complaint plausibly alleges that all bags of IAMS Grain-Free Recipe were falsely advertised as "grain free" and that Plaintiffs overpaid for that dog food by relying on Mars' misleading representations, Plaintiffs have demonstrated that they suffered a concrete and particularized injury in fact, caused by Mars, that can be redressed by an award of monetary damages. See Ficarelli v. Champion Petfoods USA, Inc., No. 3:18-cv-00361, 2018 WL 6832075, at *5 (M.D. Tenn. Dec. 28, 2018) (finding that the plaintiff had standing where he "allege[d] that he paid (or paid too much) for dog food that had excessively high levels of toxic heavy metals, which he purchased because of Defendants' deceptive and false advertisements, and [sought] money damages for the alleged harm"); see also Loeb v. Champion Petfoods USA Inc., No. 18-

CV-494-JPS, 2018 WL 2745254, at *5 (E.D. Wis. June 7, 2018). To be sure, Mars may ultimately prevail on this issue on summary judgment or at trial (where it will have the benefit of discovery and a more substantial factual record) by showing that Plaintiffs never purchased or used any mislabeled bags of IAMS Grain-Free Recipe. But taking the allegations in the Complaint as true and drawing all reasonable inferences in Plaintiffs' favor, as the Court is required to do on a motion to dismiss for lack of standing, Am. Fed'n of Gov't Emps. v. Clinton, 180 F.3d 727, 729 (6th Cir. 1999), the Court finds that Plaintiffs have plausibly alleged standing to claim damages.

### 2.    Standing for Injunctive Relief

Mars also argues that Plaintiffs lack standing to seek prospective injunctive relief because they have not alleged any threat of future injury, such as a desire or intent to purchase IAMS Grain-Free Recipe again. (Doc. No. 31 at 11–12.) As the Court noted at the outset, plaintiffs seeking injunctive relief must demonstrate "past injury *and* immediate threat of future injury." Mosley, 942 F.3d at 756 (citations omitted) (emphasis added); see also City of Los Angeles v. Lyons, 461 U.S. 95, 102–03 (1983) (holding that the threat of future injury must be "real and immediate"); Littleton, 414 U.S. at 495–96 (same). There is no question that Plaintiffs alleged a past injury by claiming that they would not have purchased (or would have paid less for) IAMS Grain-Free Recipe had they known that it contained grain or soy. (Compl. ¶¶ 20, 26, 34, 54, 118, 128, 136, 151.) But now that Plaintiffs are aware that IAMS Grain-Free Recipe is allegedly mislabeled, there are no allegations to support an inference (nor have Plaintiffs argued) that they will purchase additional bags in the future.

Nevertheless, "courts have split on whether a plaintiff who, having unveiled the defendant's deception, is unlikely to purchase (or affirmatively disavows the intent to purchase) the defendant's product in the future . . . maintains standing to pursue injunctive relief under state consumer protection statutes." Leiner v. Johnson & Johnson Consumer Cos., Inc., 215 F. Supp. 3d

11

670, 672 (N.D. Ill. 2016) (collecting cases). "Some conclude that there can be no threat of injury unless the plaintiff has specific plans to purchase the product in the future[,]" reasoning that "[i]f the injury is being fooled by misleading sales practices, . . . then a plaintiff who isn't going to buy anything faces no threat of suffering the injury again." Barclay v. Icon Health & Fitness, Inc., No. 19-cv-2970 (ECT/DTS), 2020 WL 6083704, at *5 (D. Minn. Oct. 15, 2020) (citation omitted); see also e.g., Cattie v. Wal-Mart Stores, Inc., 504 F. Supp. 2d 939, 951 (S.D. Cal. 2007) (noting that "it is unclear how prospective relief will redress [plaintiff's] injury, since she is now fully aware of the [alleged false advertising]"). Courts on the other side of the split focus on public policy concerns, reasoning that denying standing to consumers who "abandoned the product upon their discovery that it had been deceptively labeled or advertised" would prevent consumers from ever invoking the injunctive provisions of consumer protection statutes. See e.g., Leiner, 215 F. Supp. 3d at 672; Yeldo v. MusclePharm Corp., 290 F. Supp. 3d 702, 712–13 (E.D. Mich. 2017) (agreeing with the Leiner approach and concluding that plaintiff had Article III standing to seek injunctive relief).

Although the Court acknowledges the policy concerns expressed in Leiner and its progeny, it is unwilling to follow this line of cases and create a public-policy exception to binding Supreme Court and Sixth Circuit precedent requiring plaintiffs to demonstrate a real and immediate threat of future injury to pursue injunctive relief. See Lyons, 461 U.S. at 102–03; Mosley, 942 F.3d at 756; see also Barclay, 2020 WL 6083704, at *5 (declining to follow Leiner and Yeldo because the "Supreme Court's requirement that a threat of future harm be 'real and immediate'" means "that there must be *some* plausible prospect of future interactions between Plaintiffs and Defendants, even if there need not be specific plans to purchase again"). Thus, because Plaintiffs have not

12

alleged they will purchase IAMS Grain-Free Recipe or be harmed by Mars' alleged misrepresentations in the future, they lack Article III standing to seek injunctive relief.[9]

In sum, the Court will deny Mars' motion to dismiss for lack of standing to claim damages and grant its motion to dismiss for lack of standing to seek injunctive relief.

## III. MOTION TO DISMISS UNDER RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM

### A. Legal Standard

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept all of the complaint's factual allegations as true, draw all reasonable inferences in the plaintiff's favor, and "take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief." Doe v. Baum, 903 F.3d 575, 581 (6th Cir. 2018). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff need only provide "a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," Conley v. Gibson, 355 U.S. 41, 47 (1957) (internal quotation marks omitted), and the Court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged, Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511 (2002) (quoting Scheuer v. Rhodes, 416 U.S. 232 (1974)). Nevertheless, the allegations "must be enough to raise a right to relief above the speculative level," Twombly, 550 U.S. at 555, and must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," Ashcroft v. Iqbal, 556 U.S. 662, 678–79 (2009). "Conclusory allegations or legal conclusions masquerading as

---

[9] Given that the named plaintiffs do not have standing to seek injunctive relief, they cannot represent unnamed class members seeking that relief either. See Rikos v. Procter & Gamble Co., 782 F. Supp. 2d 522, 532 (S.D. Ohio 2011) (quoting Hodgers-Durgin v. de la Vina, 199 F.3d 1037, 1045 (9th Cir. 1999) ("Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief.")).

factual allegations will not suffice." <u>Eidson v. State of Tenn. Dept. of Children's Servs.</u>, 510 F.3d 631, 634 (6th Cir. 2007).

      B.    <u>Analysis</u>

      Mars first moves to dismiss this entire case as "implausible" because Plaintiffs "do not plausibly allege IAMS [Grain-Free Recipe] caused their dogs harm[,] . . . have not alleged that their dogs are even at risk of harm[,]" [and] . . . do not plausibly allege that they have been deceived or harmed." (Doc. No. 31 at 5–9.) The Court need not spend a lot of time addressing the minutiae of these arguments because Plaintiffs are seeking recovery only for their alleged economic losses, not personal injury (or more appropriately, property) damages on behalf of their pets. Moreover, Plaintiffs have adequately alleged that they were deceived by Mars' representations that IAMS Grain-Free Recipe was, as advertised, grain free, and that they would not have purchased or would have paid less for the dog food had they known it contained grain. (<u>See</u> Compl. ¶¶ 54–55.) Whether and to what extent IAMS Grain-Free Recipe harmed Plaintiffs' dogs is certainly important to understand the value customers place on grain-free dog food, but it does not affect the viability of Plaintiffs' overpayment theory of damages. Thus, the Court is not persuaded by Mars' general, non-count-specific argument that "Plaintiffs' claims are implausible." (Doc. No. 31 at 6.)

      Next, Mars specifically moves to dismiss the following claims, which the Court has reordered for ease of analysis: breach of express warranty under New York and Tennessee law (Count 2); breach of implied warranty of merchantability under New York and Tennessee law (Count 3); violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301–12, premised on New York and Tennessee law (Count 1); unjust enrichment under New York law (Count 4); and class-wide violations of the Virginia Consumer Protection Act ("VCPA"), Va. Code

14

§ 59.1-196 *et seq.*, (Count 7).[10] (Doc. No. 30 at 1.) In response to Mars' motion, Perez—the only named Tennessee plaintiff—concedes that her warranty-related claims under Tennessee law should be dismissed. (Doc. No. 37 at 10 n.2, 11 n.3.) Accordingly, the Court will grant Mars' motion to dismiss Counts 1, 2, and 3 as to Perez.

The Court will address Mars' remaining arguments below.

      1.     Breach of Express Warranty under New York Law (Count 2)

Mars argues that Fishon—the only named New York plaintiff—fails to state a claim for breach of express warranty under New York law[11] because he (1) did not plead "privity" and (2) did not adequately notify Mars of the alleged breach. (Doc. No. 31 at 17.) As an initial matter, Mars' privity argument falls flat because New York law does not require privity for breach of express warranty claims. See Goldemberg v. Johnson & Johnson Consumer Cos., Inc., 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014) ("A buyer may bring a claim [for breach of express warranty under New York law] against a manufacturer from whom he did not purchase a product directly[.]"); see also Mahoney v. Endo Health Solutions, Inc., No. 15cv9841(DLC), 2016 WL 3951185, at *6 (S.D.N.Y. July 20, 2016) (citations omitted) (denying motion to dismiss and rejecting Carcone v. Gordon Heating & Air Conditioning Co., 623 N.Y.S.2d 679 (N.Y. App. Div. 1995), a case upon which Mars relies heavily, as unpersuasive because "[t]he New York Court of Appeals has

---

[10] Mars has not moved to dismiss the following claims: violation of the MMWA, breach of express warranty, or breach of implied warranty of merchantability under Virginia law (Counts 1, 2, and 3); unjust enrichment under Virginia and Tennessee law (Count 4); violation of the New York Deceptive Trade Practices Act (Count 5); or False Advertising under New York law (Count 6).

[11] "To state a claim for breach of express warranty under New York law, a plaintiff must allege (1) the existence of a material statement amounting to a warranty, (2) the buyer's reliance on this warranty as a basis for the contract with the immediate seller, (3) breach of the warranty, and (4) injury to the buyer caused by the breach." Goldemberg v. Johnson & Johnson Consumer Cos., Inc., 8 F. Supp. 3d 467, 482 (S.D.N.Y. 2014) (citations omitted).

dispensed with the requirement of privity in cases involving breach of an express warranty where only economic damages are alleged").

Regarding adequate notice, the New York Uniform Commercial Code provides that "[w]here a tender has been accepted . . . the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." N.Y. U.C.C. § 2-607(3)(a). The purpose of providing "notice of breach" of warranty is "to disabuse the seller of the notion that the rights of the parties have been fully determined." Mid Island LP v. Hess Corp., No. 650911/2013, 2013 WL 6421281, at *3 (N.Y. Sup. Ct. 2013). But this requirement "focuse[s] almost exclusively on the *timeliness* of the suit[,]" meaning that "the commencement of litigation, as long as it is within a reasonable time, adequately provides the notice required." In re FCA US LLC Monostable Elec. Gearshift Litig., 280 F. Supp. 3d 975, 1012 (E.D. Mich. 2017) (emphasis added); see also Hess Corp. at *3 (noting that "[t]imely commencing litigation through a formal complaint would obviously accomplish" New York's notice requirement). Because Mars does not argue that Fishon waited an unreasonable amount of time before bringing this action, the Complaint satisfies New York's notice requirement.[12]

Accordingly, the Court will deny Mars' motion to dismiss Fishon's breach of express warranty claims under New York law.

---

[12] A minority of cases from the twentieth century and some non-New York decisions have suggested that buyers may be required to provide pre-suit notice of alleged warranty breaches. See Tomasino v. Estee Lauder Cos. Inc., 44 F. Supp. 3d 251, 261 n.6 (E.D.N.Y. 2014). But even if New York law required pre-suit notice, the Court would still not dismiss Fishon's claims because Plaintiffs plausibly alleged that they provided timely pre-suit notice to Mars through their May 31, 2019 demand letter. (See Doc. No. 27-2 at 3–4 ("We are notifying you that [Mars] has breached its express and implied warranties to IAMS [Grain-Free Recipe] owners" under New York law.); see also Tomasino, 44 F. Supp. 3d at 260 ("[T]he sufficiency and timeliness of the notice is generally a question for the jury.") (citation omitted).

16

2.      Breach of Implied Warranty of Merchantability under New York Law
            (Count 3)

By way of background, the New York Uniform Commercial Code provides that if a seller

of goods is a merchant, as is alleged here, there is an implied contract that the goods sold will be

of "merchantable" quality. N.Y. U.C.C. § 2-314(1). As relevant here, the statute defines

"merchantable" goods as follows:

> (2) Goods to be merchantable must be at least such as
> . . .
> (c) are fit for the ordinary purposes for which such goods are used; *and*
> . . .
> (f) conform to the promises or affirmations of fact made on the container or label if
> any.

N.Y. U.C.C. §§ 2-314(2)(c), (f) (emphasis added). If purchased goods do not meet these

requirements, then they are not merchantable, and the purchaser may assert a breach of implied

warranty claim against the seller.

Mars argues that the Court should dismiss Fishon's implied warranty of merchantability

claim because he (1) failed to allege that IAMS Grain-Free Recipe is not of merchantable quality,

and (2) did not plead privity. In support of its first argument, Mars relies on a line of cases holding

that "[w]here the sale of a food or beverage is concerned, . . . the product need only be fit for

human consumption to be of merchantable quality." Silva v. Smucker Nat. Foods, Inc., No. 14-

CV-6154 (JG)(RML), 2015 WL 5360022, at *3–*4 (E.D.N.Y. Sept. 14, 2015) (citing Ackerman

v. Coca-Cola Co., No. 09-CV-0395 (JG)(RML) 2010 WL 2925955, at *25 (E.D.N.Y. July 21,

2010)); see also Atik v. Welch Foods, Inc., No. 15-CV-5405, 2016 WL 11480151, at *5 (E.D.N.Y.

Aug. 5, 2016) (recommending that breach-of-implied warranty claims be dismissed because

although "Plaintiffs allege that the Fruit Snacks packaging misstates how healthful the product is,

. . . they do not allege that the Fruit Snacks are unfit for human consumption"). Based on these

17

cases, Mars contends that Fishon's failure to allege that IAMS Grain-Free Recipe "is not fit for canine consumption" is fatal to his implied warranty claim. (Doc. No. 31 at 18.)

Having carefully consider these cases, however, the Court respectfully finds that they were wrongly decided as a matter of statutory interpretation. "When interpreting the plain language of a statute, '[courts] mak[e] every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.'" United States v. Ninety Three Firearms, 330 F.3d 414, 421 (6th Cir. 2003) (quoting Cafarelli v. Yancy, 226 F.3d 492, 499 (6th Cir. 2000)). Here, if the Court held that IAMS Grain-Free Recipe was merchantable solely because it was "fit for the ordinary purposes for which such goods are used" (i.e. fit for human or, more appropriately, canine consumption) under § 2-314(2)(c), it would render meaningless and superfluous the other subsections in § 2-314(2), including subsection (f)'s requirement that goods must "conform to the promises or affirmations of fact made on the container or label if any." See N.Y.U.C.C. § 2-314(2). It would also ignore the plain language of § 2-314(2) and its conjunctive subparts, which require that goods must satisfy subsections (c) *and* (f) to be merchantable. Because Fishon alleges that IAMS Grain-Free Recipe "did not conform to the promises or affirmations of fact made on the container or label" that it was grain and soy free, (Compl. ¶¶ 105, 107), the Court finds that he has plausibly alleged that it was not of merchantable quality under § 2-314(2)(f).

Nevertheless, the Court agrees with Mars' second argument that Fishon's implied warranty claim fails because he has not plausibly alleged privity. "Although New York has long since dispensed with the privity requirement for express warranty claims, New York courts continue to require privity between a plaintiff and defendant with respect to claims for breach of the implied warrant[y] of merchantability . . . where the only loss alleged is economic[.]" Catalano v. BMW of N. Am., LLC, 167 F. Supp. 3d 540, 556 (S.D.N.Y. 2016). If there is no contractual privity, as

is the case here, New York plaintiffs can still meet the privity requirement by showing that they were third-party beneficiaries of the defendant's implied warranties. Id. at 557. To claim rights as a third-party beneficiary under New York law, a plaintiff "must demonstrate: (1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for his benefit and (3) that the benefit to him is sufficiently immediate, rather than incidental, to indicate the assumption by the contracting parties of a duty to compensate him if the benefit is lost." Id. (quoting Marshall v. Hyundai Motor Am., 51 F. Supp. 3d 451, 469 (S.D.N.Y. 2014)).

Fishon has not satisfied the privity requirement as a third-party beneficiary because the Complaint does not allege the existence of a valid and binding contract between Mars and another party. Instead, the Complaint merely alleges as follows:

> Defendant's intended beneficiaries of these implied warranties were ultimately Plaintiffs and Classes, not distributors who sold Defendant's IAMS [Grain-Free Recipe]. In addition, Defendant's warranties provided on the labels of the IAMS [Grain-Free Recipe] are in no way designed to apply to the distributors that purchase the IAMS [Grain-Free Recipe] in bulk and then sell them on an individual basis to each consumer. Individual consumers are the ones who ultimately review the bags of IAMS [Grain-Free Recipe] with the labels, which Defendant knows, prior to making any purchasing decisions. As a result, these warranties are specifically designed to benefit the individual consumer who purchases the IAMS [Grain-Free Recipe].

(Compl. ¶ 109.) Without any allegations that these unidentified distributors had contracts with Mars, Fishon's implied warranty claim cannot survive Mars' motion to dismiss. See Colangelo v. Champion Petfoods USA, Inc., No. 6:18-CV-1228 (LEK/ML), 2020 WL 777462, at *12 (N.D.N.Y. Feb. 18, 2020) (finding that Plaintiffs did not "state a claim for breach of implied warrant[y] of merchantability" because the "Complaint does not even allege that the retailers from which Plaintiffs purchased the dog food had contracts with [the defendant], much less that Plaintiffs were the intended beneficiaries of those contracts"); Cummings v. FCA US LLC, 401 F. Supp. 3d 288, 313 (N.D.N.Y. 2019) (same); Marshall, 51 F. Supp. 3d at 469–70 (same).

19

Although Fishon's claim suffers from this technical pleading defect, it is possible that he could amend the Complaint to plausibly state a breach of implied warranty claim. Thus, given the unique nature of this defect, the early stage of this case, "the general policy that courts should adjudicate cases on their merits rather than on technical pleading grounds," Broughton v. St. John Health Sys., 264 F. Supp. 2d 764, 775 (E.D. Mich. 2003), and Federal Rule of Civil Procedure 15(a)(2)'s requirement that "[t]he court should freely give leave [to amend] when justice so requires[,]" the Court finds it appropriate to deny Fishon's breach of implied warranty claim with an opportunity to amend. See also Brown v. Matauszak, 415 F. App'x 608, 614 (6th Cir. 2011) (citation omitted) ("[I]f it is at all possible that the party against whom the dismissal is directed can correct the defect in a pleading or state a claim for relief, the court should dismiss with leave to amend."). To the extent Plaintiffs would like an opportunity to cure the deficiencies regarding Fishon's breach of implied warranty claim, they shall file a formal motion to amend within fourteen (14) days of the filing of the accompanying Order.[13]

### 3. Magnuson-Moss Warranty Act (Count 1)

The MMWA creates separate federal rights of action for (1) violations of "written warranties," which are defined by 15 U.S.C. § 2301(6), and (2) state-law breaches of warranty. See Kuns v. Ford Motor Co., 543 F. App'x 572, 575 (6th Cir. 2013) (citing 15 U.S.C. § 2310(d)(1)). Mars argues that Plaintiffs have not plausibly alleged a violation of the MMWA "because they do not identify a written warranty within the meaning of the MMWA, and because those claims are otherwise barred by 15 U.S.C. § 2311(d)." (Doc. No. 31 at 2.) But Mars'

---

[13] Plaintiffs' throwaway request to amend in their opposition brief's concluding paragraph is insufficient because it is well settled in the Sixth Circuit that a "request for leave to amend almost as an aside, to the district court in a memorandum in opposition to the defendant's motion to dismiss is . . . not a motion to amend." La. Sch. Emps. Ret. Sys. v. Ernst & Young, LLP, 622 F.3d 471, 486 (6th Cir. 2010).

arguments are moot at this stage because Plaintiffs have clarified that they are not alleging a violation of any MMWA written warranty; instead, they are asserting MMWA claims "derivative of their state law implied warranty claims." (Doc. No. 37 at 10–11); <u>see also</u> <u>Forcellati v. Hyland's, Inc.</u>, No. CV 12-1983-GHK (MRWx), 2015 WL 9685557, at *6 (C.D. Cal. Jan. 12, 2015) (noting that if "the representations appearing on the labels of the Class Products do not constitute a written warranty under the MMWA, section 2311(d) is wholly inapplicable").

It is well-settled that "Plaintiffs' MMWA implied warranty claims will succeed—or fail—for the same reasons as their state-law UCC implied warranty claims." <u>Schechner v. Whirlpool Corp.</u>, 237 F. Supp. 3d 601, 617 (E.D. Mich. 2017) (citing <u>In re Anheuser-Busch Beer Labeling Mktg. & Sales Practices Litig.</u>, 644 F. App'x 515, 516 (6th Cir. 2016); <u>see also</u> <u>Kuns</u>, 543 F. App'x at 575 ("Therefore, the elements that a plaintiff must establish to pursue a cause of action for breach of warranty under the MMWA are the same as those required by [state] law."). Thus, because Fishon's[14] New York breach of implied warranty claim currently fails for lack of privity, the Court will deny without prejudice his MMWA claim for the same reasons.[15]

---

[14] Perez's Tennessee breach of implied warranty claim and her related MMWA implied warranty claim have already been dismissed, and Mars has not moved to dismiss Parker's implied warranty claim.

[15] Before the Court will grant Fishon leave to amend his MMWA claim, however, he must explain why an amendment would not be futile in light of 15 U.S.C. § 2311(d). That provision makes the MMWA "inapplicable to any *written warranty* the making or content of which is otherwise governed by Federal Law." 15 U.S.C. § 2311(d) (emphasis added). Although Plaintiffs now suggest that their MMWA implied warranty claims do not involve any written warranties, they also make conflicting arguments that Mars breached an implied warranty by failing to "[c]onform to the promises or affirmations of fact made on the . . . label" of IAMS Grain-Free Recipe, yet did not make any "written affirmation[s] of fact" under the MMWA. (<u>See</u> Doc. No. 37 at 10–11, 14; <u>but see</u> Compl. ¶ 84 (alleging that Mars' "issued written warranties as defined in 15 U.S.C. § 2301 . . . that [IAMS Grain-Free Recipe] did not contain corn, grain, or soy").) If those labels are qualifying written warranties, as they appear to be, relevant FDA regulations could render the MMWA inapplicable here. (<u>See</u> Doc. No. 31 at 14–15.)

4.       Unjust Enrichment under New York Law (Count 4)

Mars argues that Fishon's New York unjust enrichment claim must be dismissed because it is duplicative of his other contract-based causes of action. (Doc. No. 31 at 18–19.) "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish (1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution." Beth Israel Med. Center. v. Horizon Blue Cross and Blue Shield of New Jersey, Inc., 448 F.3d 573, 586 (2d Cir. 2006). However, "[t]he theory of unjust enrichment lies as a quasi-contract claim[,]" and "[t]he existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter." Id. at 586–87 (quoting Goldman v. Metropolitan Life Ins. Co., 841 N.E.2d 742, 746 (N.Y. 2005)); Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 516 N.E.2d 190, 193 (1987)).

"It is certainly true, as [Fishon] argues, that he may plead unjust enrichment in the alternative to his other claims." Nelson v. MillerCoors, LLC, 246 F. Supp. 3d 666, 679 (E.D.N.Y. 2017) (citing Burton v. Iyogi, Inc., 13-CV-6926, 2015 WL 4385665, at *11 (S.D.N.Y. Mar. 16, 2015)); see also (Doc. No. 37 at 15–16). "But it is equally true that, even pleaded in the alternative, claims for unjust enrichment [under New York law] will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment claim is not merely duplicative of their other causes of action." Id. (citing Ebin v. Kangadis Food Inc., 13-CV-2311, 2013 WL 6504547, at *7 (S.D.N.Y. Dec. 11, 2013).

Here, the Complaint alleges that Mars "has been unjustly enriched in retaining the revenues derived from Plaintiffs[']" purchases because "it falsely and misleadingly represented that its IAMS [Grain-Free Recipe] contained no corn, grain, or soy[.]" (Compl. ¶ 117.) Although these allegations rely on the same facts as Fishon's breach of warranty claims, (see id. ¶¶ 94–95, 105),

22

he argues that his unjust enrichment claim is "not duplicative and may be [pled] in the alternative" because the "Court could credit [Mars'] argument that a lack of privity defeats the New York warranty claims, but still find that [he] satisfied the elements for the New York unjust enrichment claim." (Doc. No. 37 at 15–16.) Not only is this argument unpersuasive because the Court rejected Mars' argument that Fishon's breach of express warranty claim fails for lack of privity, see *supra* Section III.B.1, but it is also a red herring to distinguish these claims based on their *elements*. Moreover, even if the Court had also dismissed Fishon's breach of express warranty claim, "New York law does not allow claims for unjust enrichment to serve as 'catchall cause[s] of action to be used when others fail.'" Nelson, 246 F. Supp. 3d at 679 (quoting Corsello v. Verizon N.Y., Inc., 967 N.E.2d 1177, 1185 (N.Y. 2012)). Because Fishon's unjust enrichment claim and breach of warranty claims are "based on the same *allegations*[,]" the Court will dismiss his unjust enrichment claim as duplicative. See id. (quoting Stoltz v. Fage Dairy Processing Indus., S.A., No. 14-CV-3826 (MKB), 2015 WL 5579872, at *27 (E.D.N.Y. Sept. 22, 2015)) (emphasis added).

Accordingly, Mars' motion to dismiss Fishon's New York unjust enrichment claim will be granted.

5. Class-Wide Allegations Under the Virginia Consumer Protection Act (Count 7)

Last, Mars argues that Plaintiffs cannot pursue class-wide relief under the VCPA because Virginia law generally prohibits class actions unless there is "express statutory authorization[,]" and "[t]he VCPA contains no such authorization." (Doc. No. 31 at 19–20 (citing Casey v. Merck & Co., 722 S.E. 2d 842, 846 (Va. 2012).) In response, Plaintiffs contend that Federal Rule of Civil Procedure 23 trumps Virginia state law prohibiting class-action treatment of VCPA claims. (Doc. No. 37 at 16–18.)

The Court agrees with Plaintiffs and finds that Rule 23 resolves this issue because it "unambiguously authorizes *any* plaintiff, in *any* federal civil proceeding, to maintain a class action if the Rule's prerequisites are met." Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co., 559 U.S. 393, 406 (2010). Because the VCPA conflicts with Rule 23 by "attempt[ing] to answer the same question—i.e., it states that [Plaintiffs'] suit may *not* be maintained as a class action"— it is preempted and cannot apply in this federal case. Id. at 399 (internal quotation marks omitted). Other courts faced with this issue have reached the same conclusion. See In re Hardieplank Fiber Cement Siding Litig., No. 12-MD-2359, 2013 WL 3717743, at *17 (D. Minn. July 15, 2013) (denying motion to dismiss VCPA class action allegations because "the lack of a class action mechanism [under Virginia law] is a procedural matter, rather than a substantive law defining the types of rights and remedies available under the VCPA itself"); In re Myford Touch Consumer Litig., No. 13-cv-03072-EMC, 2016 WL 7734558, at *27 (N.D. Cal. Sept. 14, 2016) ("Because Virginia's class action ban is not part of the VCPA, and applies outside the context of the VCPA, it is procedural rather than substantive, and precluded by Rule 23.").

Accordingly, Mars' motion to dismiss Plaintiffs' class-wide VCPA claim will be denied.

## IV.    MOTION TO STRIKE NATIONWIDE CLASS ALLEGATIONS UNDER RULES 12(f) AND 23

### A.    Legal Standard

Federal Rule of Civil Procedure 12(f) authorizes the Court to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "The function of the motion [to strike] is to 'avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with' them early in the case." Operating Eng'rs Local 324 Health Care Plan v. G&W Constr. Co., 783 F.3d 1045, 1050 (6th Cir. 2015) (quoting Kennedy v. City of Cleveland, 797 F.2d 297, 305 (6th Cir. 1986)).

A motion to strike class allegations under Rule 12(f) may be treated as a motion to deny class certification under Rule 23. See Bearden v. Honeywell Int'l, Inc., 720 F. Supp. 2d 932, 942 (M.D. Tenn. 2010). Rule 23 allows the Court to "require that the pleadings be amended to eliminate allegations about representation of absent persons," Fed. R. Civ. P. 23(d)(1)(D), and requires the Court to determine "[a]t an early practicable time . . . whether to certify the action as a class action," Fed. R. Civ. P. 23(c)(1)(A). Read together, Rules 12(f), 23(d)(1)(D), and 23(c)(1)(A) grant the Court "authority to strike class allegations prior to discovery if the complaint demonstrates that a class action cannot be maintained." Hovsepian v. Apple, Inc., No. 08-5788, 2009 WL 5069144, at *2 (N.D. Cal. Dec. 17, 2009).

"The moving party has the burden of demonstrating from the face of the . . . complaint that it will be impossible to certify the class as alleged, regardless of the facts plaintiffs may be able to prove." Schilling v. Kenton Cnty, Ky., No. 10-143-DLB, 2011 WL 293759, at *4 (E.D. Ky. Jan. 27, 2011) (citation omitted). "The [C]ourt should defer decision on certification pending discovery if the existing record is inadequate for resolving the relevant issues," In re Am. Med. Sys., Inc., 75 F.3d 1069, 1086 (6th Cir. 1996) (citation omitted), unless the Court is "convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim[s]" succeed in class action form, Sanders v. Apple Inc., 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009).

B.     Analysis

Plaintiffs assert claims for violating the MMWA, breach of express warranty, breach of implied warranty of merchantability, and unjust enrichment on behalf of a putative nationwide class, which the Complaint defines as follows: "All persons residing in the United States and its territories who, during the maximum period of time permitted by law, purchased IAMS [Grain-Free Recipe] primarily for personal, family or household purposes and not for resale." (Compl. ¶

25

62.) Mars has moved to strike these nationwide class allegations, arguing that "variations in state law make Plaintiffs' claims untenable for class treatment." (Doc. No. 31 at 2, 20–25.)

A party seeking to maintain a class action must establish that Rule 23(a)'s numerosity, commonality, typicality, and adequacy of representation requirements have been met, and must satisfy, through evidentiary proof, at least one of Rule 23(b)'s provisions. Comcast v. Behrend, 569 U.S. 27, 33–34 (2013). Because Plaintiffs do not have standing to seek injunctive relief (see supra Section II.B.2), Mars assumes that they will need to satisfy Rule 23(b)(3)'s requirement "that the questions of law or fact common to class members predominate over any questions affecting only individual members[.]" (See Doc. No. 31 at 20 n.15.)

Based on this assumption, Mars' motion to strike relies heavily on the Sixth Circuit's decision in Pilgrim v. Universal Health Card, LLC that affirmed the district court's decision to strike class allegations at the pleading stage "because each class member's claim would be governed by the law of the State in which he made the challenged purchase, and the differences between the consumer-protection laws of the many affected States would cast a long shadow over any common issues of fact plaintiffs might establish." 660 F.3d 943, 946–48 (6th Cir. 2011). As this Court has recognized, however, "[t]he specific claims at issue in Pilgrim . . . had features that made them inherently susceptible to factual, not merely legal, variation[s] on the basis of geography[,]" and "[t]hose factual issues, in addition to the fact that multiple states' laws were implicated, formed the basis for striking class allegations." Ciccio v. SmileDirectClub, LLC, No. 3:19-cv-00845, 2020 WL 2850146, at *16 (M.D. Tenn. June 2, 2020); see also Pilgrim, 660 F.3d at 947 (suggesting that "a nationwide class covering claims governed by the laws of the various States could overcome this [predominance] problem by demonstrating considerable factual overlap," but also stating that "this is not such a case . . . [because] [t]he defendants' program did

not operate the same way in every State and the plaintiffs suffered distinct injuries as a result"). Thus, the Court does not find Pilgrim controlling because the potential class members here allegedly suffered the same overpayment injury regardless of where they may have purchased IAMS Grain-Free Recipe.

In any event, given the "under no set of circumstances" standard for striking class allegations at the pleading stage, the Court finds that the viability of Plaintiffs' proposed nationwide class is better addressed in the context of a motion to certify under Rule 23 after discovery is completed. As Judge Aleta A. Trauger aptly explained in Ciccio:

> It is true that the plaintiffs in this case may ultimately struggle to establish that shared issues predominate over class members' claims across different jurisdictions. . . . It is not enough, however, for the defendants to simply point out that multiple states' laws will govern the claims. There must actually be some kind of identifiable discontinuity between the states' respective laws that would frustrate the possibility of a shared resolution of the claims. Many states' [consumer protection] laws . . . share significant similarities. The laws may not be identical, but the court cannot simply assume that they are too different to be applied side-by-side. That is especially true, given that this issue has been raised in the context of the rarely-appropriate tool of a motion to strike, rather than in response to a motion to certify, where the plaintiffs would bear the burden. Because the plaintiffs' prospects of class certification are not so dim as to render their allegations immaterial or impertinent within the meaning of Rule 12(f), the court will not grant the motion to strike the class allegations across the board.

2020 WL 2850146, at *16. Here, too, Mars' motion to strike Plaintiffs' nationwide class allegations will be denied as premature, without prejudice to renewal at the class certification stage.

## V. CONCLUSION

For the foregoing reasons, Mars' Motion to Dismiss and to Strike Plaintiffs' First Amended Complaint (Doc. No. 30) will be granted in part and denied in part. The Court will dismiss with prejudice Fishon's New York unjust enrichment claim (Count 4), and dismiss without prejudice Plaintiffs' request for injunctive relief; Fishon's claims for a violation of the MMWA (Count 1)

27

and breach of implied warranty of merchantability under New York law (Count 3); and Perez's claims for a violation of the MMWA (Count 1) and breach of express and implied warranty under Tennessee law (Counts 2 and 3).

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE